ROBERT BRUCE FALLS, Plaintiff v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY & ALLSTATE INSURANCE COMPANY, Defendants

No. 9327SC312

(Filed 5 April 1994)

1. **Insurance § 1155 (NCI4th)— walking along road seeking mechanical assistance—"use" of vehicle—person insured—UIM coverage**

Plaintiff was "using" his father's automobile at the time of an accident and was thus a "person insured" under his father's automobile policy for UIM purposes pursuant to N.C.G.S. § 20-279.21(b)(3)(b) when he was struck by an automobile

while walking on the shoulder of the road in search of mechanical assistance after the automobile he was driving broke down.

**Am Jur 2d, Automobile Insurance §§ 129-133.**

2. **Insurance § 530 (NCI4th)— primary UIM insurer—failure to protect subrogation rights—credit for tortfeasor's liability coverage**

The primary provider of UIM coverage was entitled to credit for the $25,000 paid by the tortfeasor's liability insurer even though it failed to protect its subrogation rights by matching the amount of the tentative settlement. The maximum amount of coverage available to plaintiff is the same regardless of who receives credit for the liability coverage provided by the tortfeasor's insurer, and the excess UIM provider still gets the benefit of the credit for the liability coverage because its UIM coverage does not apply until the liability coverage and the primary UIM coverage are exhausted.

**Am Jur 2d, Automobile Insurance §§ 293 et seq.**

Appeal by defendant North Carolina Farm Bureau Mutual Insurance Company and cross-appeal by plaintiff from order entered 20 January 1993 by Judge B. Craig Ellis in Gaston County Superior Court. Heard in the Court of Appeals 13 January 1994.

*Carpenter & James, by James R. Carpenter and Larry G. Hoyle, for plaintiff-appellee/appellant.*

*Willardson and Lipscomb, by William F. Lipscomb, for defendant-appellant/appellee Farm Bureau.*

JOHNSON, Judge.

On 30 October 1988, plaintiff, Robert Bruce Falls, was driving a 1977 Ford automobile, owned by his father, Robert G. Falls, when the automobile stalled near the Lowell-McAdenville exit ramp on Interstate 85 in Gaston County. Plaintiff then exited the vehicle and began walking up the exit ramp seeking assistance. After walking approximately one-half mile, plaintiff was struck by a 1984 automobile being operated by Karyn Bolding Arnette (hereafter Arnette). As a result of the collision, plaintiff sustained serious injuries.

Arnette's vehicle was insured by defendant, Allstate Insurance Company (hereafter Allstate), and had the minimum amount of liability insurance mandated by the provisions of North Carolina General Statutes § 20-279.21 (1993) of $25,000.00. The 1977 Ford plaintiff was operating was covered by a policy issued by defendant, North Carolina Farm Bureau Mutual Insurance Company (hereafter Farm Bureau) to plaintiff's father, and provided for underinsured motorists (UIM) coverage with limits of liability of $50,000.00 per person. Additionally, plaintiff had a personal automobile insurance policy with Allstate for two automobiles, which provided (UIM) in the amount of $50,000.00 per person per accident.

In an effort to protect its subrogation rights, Allstate tendered the coverage of $25,000.00 from Arnette's policy to plaintiff, and matched the tender from plaintiff's policies. Plaintiff then informed Farm Bureau of Allstate's tender of coverage; however, Farm Bureau did not match the tender.

Plaintiff filed a complaint against defendants Farm Bureau and Allstate on 6 July 1992 seeking a declaratory judgment that plaintiff was an insured under the UIM coverage of Farm Bureau. Defendant Farm Bureau filed an answer on 17 August 1992. Defendant Allstate's answer was filed on 2 December 1992.

Defendant Farm Bureau filed a motion for summary judgment with supporting affidavits and a motion to amend its complaint on 8 January 1993. The motion for summary judgment and the motion to amend were heard before Judge B. Craig Ellis in Gaston County Superior Court on 19 January 1993, after which the court granted defendant Farm Bureau's motion to amend. On 20 January 1993, the court entered an order and declaratory judgment, which concluded and declared in pertinent part that: "Plaintiff was an insured at the time of the accident in question of the UIM coverage of the Farm Bureau policy in question and; 2. Farm Bureau is entitled to all the credit for the tortfeasor's liability coverage in the amount of $25,000.00 because Farm Bureau's UIM coverage is primary." Defendant Farm Bureau gave notice of appeal to our Court on 12 February 1993. Plaintiff cross-appealed to our Court on 19 February 1993.

The question presented on appeal by defendant Farm Bureau is whether the trial court erred in concluding and declaring that plaintiff was an insured, at the time of the accident in question, of the UIM coverage of the Farm Bureau policy.

FALLS v. N.C. FARM BUREAU MUT. INS. CO.

[114 N.C. App. 203 (1994)]

**[1]** Farm Bureau contends that plaintiff is not an "insured" under the UIM portion of the Farm Bureau policy because plaintiff was not "using" the automobile at the time of the accident, as required by the statutory and/or policy definitions of "insured."

Farm Bureau's policy definition of insured is as follows:

Insured as used in this part means:

1. You or any family member;

2. Any other person occupying;

    a. your covered auto; or

    b. any other auto operated by you.

"You" in this case refers to plaintiff's parents, Robert G. and Edith M. Falls. "Family member" is defined in the policy as "a person related to you by blood, marriage, or adoption who is a resident of your household." "Occupying" means in; upon; getting in, or out of. Thus, plaintiff does not qualify as an insured under the policy definition of insured, because he was not a resident of his parents' household at the time of the accident. Additionally, because plaintiff was not "in; upon; getting in, or out of" the vehicle, he was not occupying the vehicle at the time of the accident.

Although plaintiff is not an insured under Farm Bureau's policy definition of insured, plaintiff may nonetheless qualify as an insured under the statutory definition of "persons insured" under North Carolina General Statutes § 20-279.21(b)(3) (1993) for purposes of UIM coverage. This is because our courts have consistently held:

> that when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute will prevail.

*Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989) (citations omitted).

North Carolina General Statutes § 20-279.21(b)(3)(b) defines "persons insured" as follows:

> the named insured and, while resident of the same household, the spouse of any named insured and relatives of either, while

FALLS v. N.C. FARM BUREAU MUT. INS. CO.

[114 N.C. App. 203 (1994)]

in a motor vehicle or otherwise, and *any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies* and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above or any other person or persons in lawful possession of the motor vehicle. (Emphasis added.)

As we have already determined that plaintiff was not a member of the insured's household at the time of the accident, we must decide whether plaintiff, who was operating the vehicle with his father's (the insured's) consent, was "using" the vehicle at the time of the accident.

In *Whisnant v. Insurance Co.*, 264 N.C. 303, 141 S.E.2d 502 (1965), the North Carolina Supreme Court held that a plaintiff struck by another vehicle as he was trying to push his vehicle onto the shoulder of the road was "using" the vehicle at the time of the accident. The Court opined that a person "uses" a motor vehicle when he[/she] purposefully uses it as a "means of transportation" to a destination. *Id.* at 308, 141 S.E.2d at 506. Additionally, the Court recognized that a person "uses" a motor vehicle when he changes a flat tire during a trip. Quoting *Madden v. Farm Bureau Mutual Automobile Ins. Co.*, 82 Ohio App. 111, 79 N.E.2d 586 (1948), the Court stated:

The changing of the tires was just as much a part of the use of the automobile for that journey as stopping to replenish the gasoline or oil, or for the change of a traffic light, or to remove ice, snow, sleet, or mist from the windshield. By such acts, the journey would not be abandoned. Such adjustments are a part of the use of the automobile — as much as the manipulation of the mechanism by the operator.

*Whisnant*, 264 N.C. at 308, 141 S.E.2d at 506.

In *Leonard v. N.C. Farm Bureau Mut. Ins. Co.*, 104 N.C. App. 665, 411 S.E.2d 178 (1991), *rev'd on other grounds*, 332 N.C. 656, 423 S.E.2d 71 (1992), our Court extended the Supreme Court's holding in *Whisnant*, finding that the plaintiff, while not the driver of the vehicle, was nonetheless "using" the automobile at the time of the accident, when he was helping the owner change a flat tire.

In the instant case, plaintiff was walking on the shoulder of the road in search of mechanical assistance after the vehicle he

was driving broke down. After reviewing the case law, and liberally construing the word "using" to ensure that the beneficial purpose of the Financial Responsibility Act will be accomplished, we find that plaintiff was "using" the vehicle at the time of the accident. There was a causal connection between plaintiff's injury and plaintiff's use of the vehicle. Additionally, we believe that immediately seeking help by walking to the nearest point to secure help for a vehicle that has become disabled, is just as much a part of the use of the vehicle for the journey as stopping to replenish the gasoline or changing a flat tire during a trip. But for the vehicle becoming disabled, the journey would not have been abandoned. As such, the trial court correctly found that plaintiff was an insured of Farm Bureau at the time of the accident.

By plaintiff's cross-appeal, plaintiff contends that the trial court erred in determining that Farm Bureau is entitled to all of the credit for the tortfeasor's liability coverage of twenty-five thousand dollars ($25,000.00).

[2]    Plaintiff argues that Farm Bureau has no interest in the twenty-five thousand dollars ($25,000.00) paid by Arnette's liability carrier Allstate because Farm Bureau failed to protect its subrogation rights by matching the amount of the tentative settlement. Therefore, plaintiff contends, defendant Allstate is entitled to the credit for the amount paid under Arnette's liability policy.

North Carolina General Statutes § 20-279.21(b)(4) (1993) states in pertinent part:

[T]he limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.

Therefore, the maximum amount of coverage available to plaintiff remains the same, regardless of who receives credit for the liability coverage provided by Allstate. However, because Farm Bureau is the primary provider of UIM coverage, Farm Bureau is entitled to the credit for the liability coverage. The excess UIM coverage providers still get the benefit of the credit for the coverage because their UIM coverage does not apply until the liability coverage and the primary UIM coverage are exhausted.

Moreover, we note that plaintiff is not the true aggrieved party; the true aggrieved party in this case is Allstate. However, Allstate did not appeal the decision of the trial court. As such, we uphold the decision of the trial court that Farm Bureau is entitled to all the credit for Arnette's liability coverage.

The decision of the trial court is affirmed.

Judges EAGLES and LEWIS concur.