BEASLEY, Justice.
The primary issue in this appeal is whether an insured may, in a situation in which there is more than one at-fault driver responsible for the accident causing the insured’s injuries, recover under his or her underinsured motorist (UIM) policy before exhausting the liability insurance policies of all the at-fault drivers. We conclude that the insured is only required to exhaust the liability insurance coverage of a single at-fault motorist in order to trigger the insurer’s obligation to provide UIM benefits. Accordingly, we affirm the Court of Appeals’ decision on this issue. Because, however, the trial court’s award of interest and costs against the insurer in this case exceeds the amount the insurer contractually promised to pay under the terms of its policy with the insured, the Court of Appeals erred in upholding that portion of the award. In this respect, we reverse the Court of Appeals.
Facts
The parties to this appeal have stipulated to the material facts, which tend to establish that on 18 September 2009, defendant Thomas E. Mills was operating a tractor-trailer owned by his employer, defendant James W. Crowder, III. Mills was traveling eastbound on Interstate Highway 40 in McDowell County when he lost control while rounding a curve, causing his vehicle to collide with the concrete median barrier and flip. Plaintiff Douglas Kirk Lunsford, a volunteer firefighter, responded first to the scene and found that Mills was injured and that diesel fuel was leaking from the tractor-trailer. Lunsford, who was standing in the highway median, attempted to lift Mills over the concrete divider so that he could carry Mills to safety and assess his injuries. As Lunsford was doing so, defendant Shawn T. Buchanan was driving westbound on Interstate Highway 40. When the vehicle in front of Buchanan slowed down because of the tractor- *620 trailer accident, Buchanan swerved to the left to avoid the vehicle and struck Lunsford. Lunsford was dragged underneath Buchanan’s car and suffered severe injuries, including multiple broken bones, lacerations, and internal injuries.
At the time of the accidents, Mills and Crowder were insured through Crowder’s business motor vehicle policy with United States Fire Insurance Company (U.S. Fire), which provided a liability coverage limit of $1 million. The second driver, Buchanan, was insured under a policy written by Allstate Insurance Company (Allstate), providing liability coverage of $50,000. Lunsford maintained two policies with unnamed defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau): (1) a business policy with UIM coverage of $300,000; and (2) a personal policy with UIM coverage of $100,000.
Lunsford subsequently filed a negligence action against Mills, Crowder, and Buchanan (named defendants), claiming that they were jointly and severally liable for his injuries. All named defendants filed answers, which included crossclaims for indemnification and contribution. Farm Bureau, as an unnamed defendant, also filed an answer in which it claimed that it would be entitled to an offset with respect to Lunsford’s UIM policies for any damages he recovered through the insurance policies held by the named defendants.
On 24 May 2011, Allstate tendered to Lunsford the $50,000 liability coverage limit for Buchanan’s policy. Lunsford’s attorney notified Farm Bureau the next day of Allstate’s tender and demanded that Farm Bureau tender payment on Lunsford’s UIM claim. In a letter dated 7 June 2011, Farm Bureau indicated that (1) it would not advance the liability policy limits tendered to Lunsford by Allstate; and (2) it would review its legal options regarding Lunsford’s UIM claim and respond “at a later date.” On 15 November 2011, Lunsford’s attorney informed Farm Bureau that Lunsford had tentatively settled his claims against Mills and Crowder for $850,000, which was to be paid through Crowder’s policy with U.S. Fire. At the time of these settlements, Farm Bureau had not provided UIM coverage to Lunsford.
On 12 January 2012, the trial court entered an order approving the settlement agreements. On 19 July 2012, Farm Bureau filed a motion for summary judgment on Lunsford’s UIM claim, arguing that he was not entitled to UIM coverage because the total amount of his settlements with Buchanan, Mills, and Crowder ($50,000 + $850,000 = $900,000) exceeded the aggregate amount of Lunsford’s UIM policies *621 ($300,000 + $100,000 = $400,000). Lunsford also moved for summary judgment, maintaining that his UIM policies stacked and that he was entitled to recover $350,000 from Farm Bureau — the amount of his aggregated UIM coverage limit ($400,000) minus the $50,000 he recovered through his settlement with Buchanan.
After conducting a hearing on the parties’ motions, the trial court entered an order on 13 November 2012 granting summary judgment in favor of Lunsford. The trial court accordingly ordered Farm Bureau to pay Lunsford $350,000, plus costs and pre- and post-judgment interest “as provided by law.”
Farm Bureau appealed the trial court’s order to the Court of Appeals, primarily arguing that the trial court erred in granting summary judgment in favor of Lunsford and ordering Farm Bureau to pay $350,000 in UIM coverage because, under the statute governing UIM coverage, Farm Bureau “was not required to provide coverage until all applicable policies — meaning all policies held by all the named Defendants — had been exhausted.” Lunsford v. Mills,_N.C. App. _, _, 747 S.E.2d 390, 393 (2013). The court disagreed based on its reading of the UIM statute: “ ‘Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted.’ ” Id. at_, 747 S.E.2d at 393 (quoting N.C.G.S. § 20-279.21(b)(4) (emphasis added by court)). The court interpreted this language “to mean that UIM coverage is triggered the moment that an insured has recovered under all policies applicable to ‘a’ — meaning one — ‘underinsured highway vehicle’ involved in a motor vehicle accident resulting in injury to the insured.” Id. at_, 747 S.E.2d at 393 (emphasis added).
Noting that the issue of when UIM coverage is triggered in situations involving multiple potential at-fault drivers is one of first impression in North Carolina, the Court of Appeals believed that its interpretation of the UIM statute was consistent with that court’s precedent suggesting that “insureds should [not] ‘be kept hanging in limbo as they are forced to sue any and all possible persons ... before they could recover UIM benefits’ just because other potential tortfeasors also happen to be covered under automobile policies.” Id. at _, 747 S.E.2d at 394 (quoting Farm Bureau Ins. Co. of N.C. v. Blong, 159 N.C. App. 365, 373, 583 S.E.2d 307, 312, disc. rev. denied, 357 N.C. 578, 589 S.E.2d 125 (2003)). In light of this rationale, the court determined that, in such a situation, UIM carriers are obligated *622 “to first provide coverage, and later seek an offset through reimbursement or exercise of subrogation rights.” Id. at_, 747 S.E.2d at 394. Consequently, the court determined that upon the exhaustion of “all policies applicable to Mr. Buchanan’s vehicle,” Lunsford’s “UIM coverage was triggered,” and “Farm Bureau was not at liberty to withhold coverage until [Lunsford] reached settlement agreements with Mr. Mills and Mr. Crowder.” Id. at_, 747 S.E.2d at 394.
Farm Bureau alternatively argued that, even it were required to provide UIM coverage, the trial court nevertheless erred in ordering it to pay pre- and post-judgment interest and costs. In support of this contention, Farm Bureau cited our decision in Sproles v. Greene, 329 N.C. 603, 613, 407 S.E.2d 497, 503 (1991), in which we concluded that North Carolina’s compulsory motor vehicle insurance laws do not impose an obligation on liability insurers to pay interest on a judgment in excess of the insurer’s policy limits, but rather, such an obligation “is governed by the terms of the [insurance] policy.” The Court of Appeals believed that Sproles was distinguishable on the ground that Sproles held that a “UIM carrier is not required to pay pre and post-judgment interest on behalf of the insured where the judgment has been entered against the insured.” Lunsford,_N.C. App. at ._, 747 S.E.2d at 395 (citing Sproles, 329 N.C. at 605, 407 S.E.2d at 498). Here, in contrast, “the judgment was entered against Farm Bureau itself, not against its insured (Plaintiff).” Id. at _, 747 S.E.2d at 395. Thus the court concluded that Sproles “ha[d] no bearing on the case at hand” and upheld the trial court’s award of interest and costs. Id. at_, 747 S.E.2d at 395 (2013).
Farm Bureau petitioned this Court for discretionary review of the Court of Appeals’ decision regarding both the UIM coverage and the judgment interest issues. We allowed Farm Bureau’s petition with respect to both questions. 367 N.C. 259, 749 S.E.2d 843 (2013).
Standard of Review
Under Rule 56(c) of the North Carolina Rules of Civil Procedure, summary judgment is appropriate when the record establishes that there are no genuine issues of material fact and that any party is entitled to judgment as a matter of law. N.C. R. Civ. P. 56(c); e.g., In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Here the parties have stipulated to the material facts, and therefore, the only question for our consideration is whether either party is entitled to judgment as a matter of law. Answering this question primarily involves interpretation of the Motor Vehicle Safety and Financial *623 Responsibility Act of 1953 (commonly referred to as the “FRA”), N.C.G.S. §§ 20-279.1 through -279.39 (2013), and examination of the terms of Farm Bureau’s motor vehicle insurance policy, each a question of law. See Brown v. Flowe, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998) (“A question of statutory interpretation is ultimately a question of law for the courts.”); Wachovia Bank & Trust v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (observing that the interpretation of “the language used in [a] policy of insurance” is “a question of law”). This Court reviews questions of law de novo, meaning that we consider the matter anew and freely substitute our judgment for the judgment of the lower court. In re Greens of Pine Glen Ltd. P’ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citation omitted).
Underinsured Motorist Coverage
The parties’ principal dispute centers on the proper interpretation of subdivision 20-279.21(b)(4), the FRA’s provision governing UIM coverage. The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990). “If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.” Hyler v. GTE Prods. Co., 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993) (citations omitted), superseded in part by statute, Workers’ Compensation Reform Act of 1994, ch. 679, sec. 2.5, 1993 N.C. Sess. Laws 394, 399-400, as recognized in N.C. Ins. Guar. Ass’n v. Bd. of Trs., 364 N.C. 102, 691 S.E.2d 694 (2010). Thus, in effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used. N.C. Dep’t of Corr. v. N.C. Med. Bd., 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009); accord In re Banks, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (“[C]ourts must give [a clear and unambiguous] statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.”).
The first paragraph of subdivision 20-279.21(b)(4) defines the term “underinsured highway vehicle” as
a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of *624 underinsured motorist coverage for the vehicle involved in the accident and insured under the owner’s policy.
N.C.G.S. § 20-279.21(b)(4). The statute further sets out when UIM coverage is triggered:
Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted.
Id. (“triggering provision”).
Farm Bureau reads the reference to “all bodily injury liability bonds and insurance policies applicable at the time of the accident” in the definition of an underinsured highway vehicle to mean that, in determining whether UIM coverage is triggered, the insured’s UIM coverage limit must be compared to the sum of all of the liability limits of all the at-fault motorists. Thus, according to Farm Bureau, as a prerequisite to receiving UIM benefits, Lunsford was required to exhaust not only Buchanan’s liability limits, but also the policy limits of Mills and Crowder to the extent that they are liable as joint tortfeasors. We read subdivision 20-279.21(b)(4) differently.
As an initial matter, the reference to “all bodily injury liability bonds and insurance policies applicable at the time of the accident” is found in the UIM statute’s definition of an “underinsured highway vehicle,” not in the triggering provision. The location of the clause in a separate and distinct provision of the UIM statute indicates that the clause relates solely to an underinsured highway vehicle and not, as Farm Bureau suggests, to all the vehicles involved in an accident. See Colonial Penn Ins. Co. v. Salti, 84 A.D.2d 350, 352, 446 N.Y.S.2d 77, 79 (N.Y. App. Div. 1982) (“[T]he [UIM] endorsement affords coverage for bodily injury arising out of the use of an underinsured highway vehicle and the clause ‘the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident’. . . should be read to relate ... to [the underinsured] vehicle only, and not, as [the insurer] contends, to the total number of vehicles involved in the accident.” (emphasis added)).
An examination of the actual language of the triggering provision further undermines Farm Bureau’s reading of the statute to provide that UIM coverage is not triggered until “all liability limits applicable ‘at the time of the accident’ ” are exhausted. The plain language of the *625 triggering provision identifies the liability bonds and insurance policies relevant to determining whether UIM coverage is triggered as those bonds and policies relating to “the ownership, maintenance, or use of the underinsured highway vehicle.” N.C.G.S. § 20-279.21(b)(4) (emphasis added). A statute’s use of the definite article — “the”—indicates that the legislature intended the term modified to have a singular referent. See Renz v. Grey Adver., Inc., 135 F.3d 217, 222 (2d Cir. 1997) (“Placing the article ‘the’ in front of a word connotes the singularity of the word modified.”); see also Gen. Accident Ins. Co. v. Wheeler, 221 Conn. 206, 211, 603 A.2d 385, 387 (1992) (concluding, under an insurance regulation providing that “the ‘insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured [or underinsured] motor vehicle,’ ” that an insured is required to exhaust “the insurance coverage of only one tortfeasor” in order to recover UIM benefits (brackets in original)).
Farm Bureau’s interpretation effectively rewrites the triggering provision to provide that UIM coverage applies only once all liability bonds or insurance policies providing coverage for any party potentially liable for the insured’s bodily injuries have been exhausted. But that is not what the statute says. The plain language of the triggering provision establishes that when an insured suffers bodily injury caused by the ownership, maintenance, or use of an underinsured highway vehicle, and when the liability bonds or insurance policies providing coverage for that vehicle have been exhausted, UIM coverage is triggered. Accordingly, a UIM carrier’s statutory obligation to provide UIM benefits is triggered when the insurer of a single vehicle meeting the definition of an underinsured highway vehicle tenders its liability limits to the UIM claimant through an offer of settlement or in satisfaction of a judgment. See Register v. White, 358 N.C. 691, 698, 599 S.E.2d 549, 555 (2004) (“Exhaustion occurs when the liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment.”).
Farm Bureau contends, however, that this interpretation of subdivision 20-279.21(b)(4) has been “expressly rejected by the legislature.” In support of this argument, Farm Bureau points to the General Assembly’s consideration and ultimate rejection of a bill proposed in the 1983 legislative session that was designed “to clarify the law concerning UIM coverage.” The proposed bill would have completely *626 repealed subdivision 20-279.21(b)(4), the FRA’s provision governing UIM coverage, and amended subdivision 20-279.21(b)(3), the provision governing uninsured motorist coverage, so that an underinsured motor vehicle would have constituted an “uninsured motor vehicle” to the extent of “the difference between the limits of the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverage provided under the insured’s motor vehicle liability insurance policy.” H. 60, 135th Gen. Assemb., Reg. Sess. (N.C. 1983) (emphasis added).
The fact that this proposed bill was not enacted is unavailing. When, as here, “the language of a statute expresses the legislative intent in clear and unambiguous terms, the words employed must be taken as the final expression of the meaning intended unaffected by its legislative history.” Piedmont Canteen Serv., Inc. v. Johnson, 256 N.C. 155, 161, 123 S.E.2d 582, 586 (1962) (citations omitted); accord Wake Cares, Inc. v. Wake Cnty Bd. of Educ., 190 N.C. App. 1, 25, 660 S.E.2d 217, 232 (2008) (explaining that “[Legislative, history cannot ... be relied upon to force a construction on [a] statute inconsistent with the plain language”), aff’d, 363 N.C. 165, 675 S.E.2d 345 (2009).
Farm Bureau’s construction of the UIM statute also undermines the statute’s purpose. Section 20-279.21 “was passed to address circumstances where ‘ “the tortfeasor has insurance, but his [or her] coverage is in an amount insufficient to compensate the injured party for his [or her] full damages.” ’ ” Progressive Am. Ins. Co. v. Vasquez, 350 N.C. 386, 390, 515 S.E.2d 8, 10-11 (1999) (first alteration in original) (quoting Harris v. Nationwide Mut. Ins. Co., 332 N.C. 184, 189, 420 S.E.2d 124, 127 (1992), superseded by statute, Act of July 12, 1991, ch. 646, secs. 1, 2, 1991 N.C. Sess. Laws 1550, 1559). We have recognized the remedial nature of subdivision 20-279.21(b)(4) and explained that the statute should be “liberally construed” in order to accomplish its purpose of “protecting] ... innocent victims who may be injured by financially irresponsible motorists.” Proctor v. N.C. Farm Bureau Mut. Ins. Co., 324 N.C. 221, 224-25, 376 S.E.2d 761, 763 (1989). To that end, subdivision 20-279.21(b)(4) — as well as the FRA as a whole — should be “interpreted to provide the innocent victim with the fullest possible protection.” Id. at 225, 376 S.E.2d at 764.
If Farm Bureau’s interpretation were adopted, insureds would be required to pursue all claims, including weak, tenuous ones, against all potentially liable parties, no matter how impractical, before being eligible to collect their contracted-for UIM benefits. Placing this bur *627 den on insureds — who, like Lunsford, commonly suffer serious injuries and need prompt payment of benefits to pay medical expenses and other costs — -would substantially delay the recovery of UIM benefits and promote litigation expenses that reducé insureds’ overall recovery. See Wheeler, 221 Conn, at 213, 603 A.2d at 388 (observing that if the insured is not permitted to recover UIM benefits until exhausting all liability limits of all joint tortfeasors, “the insured could be required to pursue claims of weak liability against third parties, thereby fostering marginal and costly litigation in our courts”). Because Farm Bureau’s interpretation of subdivision 20-279.21(b)(4) would fail to provide innocent victims “the fullest possible protection,” we reject Farm Bureau’s proposed construction. See Proctor, 324 N.C. at 225-26, 376 S.E.2d at 764 (rejecting insurer’s construction of subdivision 20-279.21(b)(4) that “resulted] in the least possible protection for the innocent victim of an underinsured tortfeasor” and thus “undermine[d] the intent and purpose of the statute”).
Our conclusion that an insured may recover UIM benefits upon exhausting the liability limits of a single at-fault motorist is further buttressed by examining the subrogation provision of section 20-279.21. See Faizan v. Grain Dealers Mut. Ins. Co., 254 N.C. 47, 53, 118 S.E.2d 303, 307 (1961) (construing provisions of the FRA in pari materia). The third paragraph of subdivision 20-279.21(b)(4) states in pertinent part:
An underinsured motorist insurer may at its option, upon a claim pursuant to underinsured motorist coverage, pay moneys without there having first been an exhaustion of the liability insurance policy covering the ownership, use, and maintenance of the underinsured highway vehicle. In the event of payment, the underinsured motorist insurer shall be either: (a) entitled to receive by assignment from the claimant any right or (b) subrogated to the claimant’s right regarding any claim the claimant has or had against the owner, operator, or maintainer of the underinsured highway vehicle, provided that the amount of the insurer’s right by subrogation or assignment shall not exceed payments made to the claimant by the insurer.
N.C.G.S. § 20-279.21(b)(4); see also id. § 20-279.21(b)(3) (providing an insurer a right to reimbursement from settlement proceeds, to the extent the insurer has made a “payment to any person under the coverage required by this section and subject to the terms and conditions of coverage”).
*628 If, as Farm Bureau argues, insureds were required to exhaust the liability policies of all at-fault motorists as a prerequisite to recovering UIM coverage, there would be no need to provide UIM carriers subrogation or reimbursement rights, and consequently, these provisions would be rendered meaningless. See Leslie v. W.H. Transp. Co., 338 F. Supp. 2d 684, 689 (S.D. W. Va. 2004) (“The reservation of a subrogation right indicates that [the insurer] foresees situations in which an insured receives UIM benefits and [the insurer] then pursues a claim against a tortfeasor who is legally liable for the damages suffered by the insured. If the insured were required to exhaust every tortfeasor’s policy limit before receiving UIM benefits, it is hard to imagine a UIM scenario in which subrogation rights would arise.”). Yet it is a fundamental principle of statutory interpretation that courts should “evaluate [a] statute as a whole and ... not construe an individual section in a manner that renders another provision of the same statute meaningless.” Polaroid Corp. v. Offerman, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998) (citation omitted), cert. denied, 526 U.S. 1098, 119 S. Ct. 1576, 143 L. Ed. 2d 671 (1999), abrogated on other grounds by Lenox, Inc. v. Tolson, 353 N.C. 659, 548 S.E.2d 513 (2001).
Moreover, given the General Assembly’s provision of subrogation and reimbursement rights for the financial protection of insurers, we cannot agree with Farm Bureau’s argument that the trial court’s order resulted in a “windfall” for Lunsford. Farm Bureau could have preserved its subrogation rights by advancing its UIM policy limits. See State Farm Mut. Auto. Ins. Co. v. Blackwelder, 332 N.C. 135, 138-39, 418 S.E.2d 229, 231 (1992) (concluding that the insurer of the injured party’s vehicle had “preserved its subrogation rights” against the estate of the deceased tortfeasor by advancing the deceased tortfeasor’s liability limits to its insured and by advancing an additional amount to settle its insured’s UIM claim). Had Farm Bureau elected to do so, it would have been entitled to recoup the advanced funds from the proceeds of the settlements with Mills and Crowder.[1] N.C.G.S. *629 § 20-279.21(b)(3). But by not advancing its policy limits, Farm Bureau waived its subrogation rights. See N.C.G.S. § 20-279.21(b)(4) (prohibiting insurers from exercising any right of subrogation when “the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days” of receiving written notice of the proposed settlement).
In sum, we believe that the structure and plain language of subdivision 20-279.21(b)(4), the purpose behind the UIM statute, and the legislature’s inclusion of subrogation rights for insurers, compel the conclusion that UIM coverage is triggered upon the exhaustion of the policy limits of a single at-fault motorist. Accordingly, upon Allstate’s tender of its policy limit of $50,000 on behalf of Buchanan, UIM coverage was triggered under subdivision 20-279.21(b)(4), and Lunsford was entitled to recover UIM benefits according to the terms of his policy with Farm Bureau. We therefore affirm the Court of Appeals’ decision on this issue.
Judgment Interest and Costs
Farm Bureau also challenges the Court of Appeals’ determination that Lunsford is entitled to pre- and post-judgment interest and costs. Farm Bureau contends that the award of these damages, taxed in excess of Lunsford’s UIM coverage limits, conflicts with our decision in Baxley v. Nationwide Mutual Insurance Co., 334 N.C. 1, 430 S.E.2d 895 (1993). We agree.
We have established that “when a statute is applicable to the terms of a policy of insurance, the provisions of that statute become terms of the policy to the same extent as if they were written in it, and if the terms of the policy conflict with the statute, the provisions of the statute prevail.” Id. at 6, 430 S.E.2d at 898 (citing Sutton v. Aetna Cas. & Surety Co., 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989)). Section 20-279.21 is silent with respect to pre- and post-judgment interest, and thus subsection 24-5(b), the statute governing judgment interest, “is not a part of the Financial Responsibility Act so as to be written into every liability policy.” Id. (citing Sproles, 329 N.C. at 613, 407 S.E.2d at 503). When, as here, no statutory provision dictates a liability insurer’s obligation to pay interest in excess of its policy *630 limits, such an obligation “is governed by the language of the policy.” Id. (citing Sproles, 329 N.C. at 612-13, 407 S.E.2d at 502-03) (emphasis omitted).
The pertinent language in Lunsford’s business and personal policies states that Farm Bureau promises to pay, up to its UIM policy limit,
all sums the “insured” is legally entitled to recover as compensatory damages from the owner or driver of:
a. An “uninsured motor vehicle” because of “bodily injury” sustained by the “insured” and caused by an “accident”; and
b. An “uninsured motor vehicle” as defined in Paragraphs a. and c. of the definition of “uninsured motor vehicle”, because of “property damage” caused by an “accident”.
The owner’s or driver’s liability for these damages must result from the ownership, maintenance or use of the “uninsured motor vehicle”.
(Emphasis added.) The policies’ definition of an “uninsured motor vehicle” includes an “underinsured motor vehicle.”
In Baxley, 334 N.C. at 6-7, 430 S.E.2d at 899, we examined substantially similar policy language:
The contractual language [at issue] is [the UIM carrier’s promise to pay, up to its UIM policy limit,
damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:
1. Bodily injury sustained by a covered person and caused by an accident; and
2. Property damage caused by an accident.
Holding that interest is an element of “damages,” id. at 11, 430 S.E.2d at 901, we held that, based on the pertinent policy language, the UIM carrier in Baxley was “obligated to pay pre-judgment interest up to its policy limits.” Id. at 6, 430 S.E.2d at 898 (emphasis omitted). Our reasoning in Baxley regarding judgment interest has similarly been applied to costs. See Wiggins v. Nationwide Mut. Ins. Co., 112 N.C. App. 26, 35-36, 434 S.E.2d 642, 648 (1993) (rejecting, based on Baxley, the insurer’s contention “that ‘damages’ does not include costs or interest”).
*631 The relevant language in Farm Bureau’s policy is, we believe, materially indistinguishable from the policy language at issue in Baxley. Accordingly, the Court of Appeals erred in concluding that Farm Bureau was required to pay pre- and post-judgment interest and costs in excess of its remaining UIM policy limit of $350,000. Because Farm Bureau contractually capped its obligation to pay “compensatory damages” at its UIM coverage limit, Farm Bureau is not required to pay interest and costs over and above the $350,000 coverage amount. See Baxley, 334 N.C. at 11, 430 S.E.2d at 901 (“Since [the UIM carrier] promised to pay [the insured]’s resulting damages, it must now do so, up to, but not in excess of, its UIM policy limits.”).
Lunsford nonetheless claims that Farm Bureau should be required to pay pre- and post-judgment interest because the judgment “was entered directly against Farm Bureau” due to Farm Bureau’s “breach of its obligations under its insurance contract.” This argument is misplaced. There is no underlying breach of contract claim against Farm Bureau in this case, and thus, such a claim could not have been the basis for the trial court’s award of interest and costs. Rather, the basis for the award is Farm Bureau’s promise to pay, up to its UIM coverage limit, the “compensatory damages” resulting from the named defendants’ negligence. In such circumstances, our precedent “clearly establishes]” that the extent to which a UIM carrier is required to pay judgment interest is controlled by “the specific terms of [the] policy.” Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 491, 467 S.E.2d 34, 40 (1996). Farm Bureau was permitted to, and did in fact, cap its liability for damages, including interest, at the amount of its UIM coverage limit. We accordingly reverse the Court of Appeals’ decision with respect to interest and costs.
Conclusion
We affirm that part of the decision of the Court of Appeals holding than an insured is only required to exhaust the liability insurance coverage of a single at-fault motorist in order to trigger the insurer’s obligation to provide UIM benefits. We reverse the decision of the Court of Appeals awarding interest and costs against the insurer in an amount that exceeds the amount the insurer contractually promised to pay under the terms of its policy with the insured. This case is remanded to the Court of Appeals for further remand to the Superior Court, McDowell County, for proceedings not inconsistent with this opinion.
*632 AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
Justice HUNTER did not participate in the consideration or decision of this case.

. Farm Bureau further contends that Lunsford’s recovery of an amount greater than his contracted-for UIM coverage limit is inconsistent with the purpose of the UIM statute, as articulated by the Court of Appeals in Nationwide Mutual Insurance Co. v. Haight, 152 N.C. App. 137, 566 S.E.2d 835 (2002), disc. rev. denied, 356 N.C. 675, 577 S.E.2d 627 (2003), in which the court stated: “UIM coverage is intended to place a policy holder in the same position that the policy holder would have been in if the tortfeasor had had liability coverage equal to the amount of the . . . UIM coverage.” Id. at 142, 566 S.E.2d at 838 (citations, emphasis, and quotation marks omitted). We perceive no inherent conflict between Haight’s articulation of the intended purpose of the UIM statute and the principle we reaffirmed in Proctor that subdivision 20-279.21(b)(4), as a remedial statute, must be “interpreted to provide the innocent victim with the fullest *629 possible protection." Proctor, 324 N.C. at 225, 376 S.E.2d at 764. Even if, as we have held, a UIM carrier is required to provide UIM coverage upon exhaustion of the liability liinits of a single tortfeasor, the carrier may still seek recovery of any overpayment through the exercise of its rights to subrogation or reimbursement. Through these mechanisms, insurers are able to recoup any overpayment and insureds are divested of any so-called “windfall.”