IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-338

No. COA21-226

Filed 17 May 2022

Henderson County, No. 20 CVS 517

RACHEL LYNNE OSBORNE, Plaintiff,

v.

HEATH PARIS, JORDAN ASHWORTH and GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendants.

Appeal by Plaintiff from judgment entered 11 September 2020 by Judge Peter B. Knight in Henderson County Superior Court. Heard in the Court of Appeals 15 December 2021.

> *Whitfield-Cargile Law, PLLC, by Davis A. Whitfield-Cargile, for Plaintiff-Appellant.*

> *Davis & Hamrick, L.L.P., by James G. Welsh, Jr., and Ann C. Rowe, for Defendant-Appellee.*

INMAN, Judge.

¶ 1    This appeal arises from a dispute between an insured and her insurance provider over motor vehicle liability insurance coverage for grave injuries she sustained in a collision between an uninsured motorcycle, on which she was a passenger, and an underinsured car. Resolving the disagreement requires us to apply North Carolina statutes to three automobile insurance policies, two providing

uninsured motorist coverage, and one providing combined uninsured and underinsured motorist coverage. After careful review of the insurance policies at issue, the Motor Vehicle Safety and Financial Responsibility Act ("Financial Responsibility Act"), and our caselaw, we affirm the trial court's entry of summary judgment in favor of Defendant-Appellee Government Employee's Insurance Company ("GEICO"), in part, but modify the amount GEICO must pay Ms. Osborne because it was not entitled to a credit against its uninsured motorist coverage.

¶ 2        Plaintiff-Appellant Rachel Osborne ("Ms. Osborne") argues that the trial court erred in granting summary judgment in favor of GEICO on her claim for $70,000 in underinsured motorist coverage in addition to $100,000 of uninsured motorist coverage. Ms. Osborne contends her right to recover underinsured motorist coverage was triggered when GEICO tendered Defendant Jordan Ashworth's ("Mr. Ashworth") liability limits to Ms. Osborne, and that the Financial Responsibility Act, N.C. Gen. Stat. §§ 20-279.21(b)(3) and (4) (2021), does not allow GEICO to reduce the $160,000 uninsured motorist coverage by its payment of Mr. Ashworth's $30,000 liability limit. Ms. Osborne also argues the trial court erred in granting summary judgment to GEICO on her claims of bad faith and unfair trade practices.

## I.  FACTUAL & PROCEDURAL BACKGROUND

¶ 3        On the night of 4 April 2017, Ms. Osborne was a passenger on a motorcycle on Crab Creek Road in Transylvania County, traveling toward Brevard. The motorcycle

was operated by its owner, Defendant Heath Paris ("Mr. Paris"). Ahead of Mr. Paris on the same road, Mr. Ashworth was driving his car, also headed toward Brevard. As Mr. Ashworth approached an intersection, he allegedly signaled to turn right and slowed his vehicle as if he was pulling over on the shoulder of the road. Anticipating the car's right turn, Mr. Paris attempted to pass on the car's left, in a non-passing zone. At the same time, Mr. Ashworth turned left, instead of right, and the motorcycle and car collided. The impact sent the motorcycle airborne. Ms. Osborne was ejected and landed on the ground a great distance from the motorcycle. She sustained serious injuries requiring several surgeries and other extensive medical treatment, and her injuries will require future surgeries and treatment.

¶ 4        Mr. Paris' motorcycle was uninsured, meaning no policy of liability insurance existed to provide coverage for the motorcycle or for Mr. Paris as a driver. Mr. Ashworth's car was insured by a liability insurance policy through GEICO, with minimum-limits bodily injury liability coverage of $30,000 per person. It is undisputed Mr. Ashworth's vehicle is an "underinsured motor vehicle" as defined by the Financial Responsibility Act.

¶ 5        GEICO tendered $30,000 to Ms. Osborne under Mr. Ashworth's policy on 6 March 2020.

¶ 6        Three days later, on 9 March 2020, Ms. Osborne, through counsel, sent a written demand to GEICO for $160,000 of uninsured motorist coverage and $70,000

of underinsured motorist coverage under three different GEICO policies. Her own liability insurance policy with GEICO, Policy no. 4416-06-95-42 ("Policy 42"), provided uninsured motorist coverage up to $30,000 per person. Because Ms. Osborne lived in the same household as her parents, Bobby and Ginger Osborne, she was also covered by their policies with GEICO. Policy no. 4325-46-40-65 ("Policy 65"), which covers two vehicles, neither of which were involved in the underlying accident, provides combined uninsured and underinsured bodily injury liability coverage of $100,000 per person and a total limit of $300,000 per accident. Policy 65 provides that the "limit of bodily injury liability shown in the Declarations for each accident for Combined Uninsured/Underinsured Motorists Coverage is [the] maximum limit of liability for all damages for bodily injury resulting from any one accident." Ms. Osborne also claims she is entitled to coverage under Policy no. 4325-46-67-06 ("Policy 06"), which insures a single motorcycle owned by Ms. Osborne's parents and not involved in the underlying accident. Policy 06 provides limits of liability for uninsured motorist bodily injury liability of $30,000 for each person, with a total limit of $60,000 per accident.

¶ 7        On 13 March 2020, four days after Ms. Osborne formally demanded payment from GEICO, she filed suit against Mr. Paris and Mr. Ashworth, alleging negligence, as well as GEICO, alleging GEICO had: (1) breached its obligation to pay underinsured motorist benefits and uninsured motorist benefits to her; (2) displayed

bad faith in its refusal to settle with Ms. Osborne on reasonable terms; and (3) engaged in unfair and deceptive trade practices. Ms. Osborne alleged that because Mr. Paris was uninsured, she was entitled to benefits under her policy's uninsured coverage, uninsured coverage under her parents' motorcycle policy, and uninsured coverage of her parents' automobile policy. She also alleged she was entitled to an additional $100,000 in underinsured coverage under her parents' automobile policy, Policy 65, because Mr. Ashworth was an underinsured motorist.

¶ 8        On 6 April 2020, GEICO remitted to Ms. Osborne three checks totaling $130,000—$100,000 combined uninsured/underinsured coverage under Policy 65, $15,000 uninsured coverage under Policy 42, and $15,000 uninsured coverage under Policy 06.[1] GEICO's counsel asserted Ms. Osborne was entitled to $130,000 of uninsured motorist coverage, the total available coverage of $160,000 under all three policies, less a $30,000 credit for the amount paid to Ms. Osborne under Mr. Ashworth's liability policy. GEICO contends this credit is required by its policy language providing that "coverage shall be reduced by all sums . . . [p]aid because of bodily injury . . . by or on behalf of persons or organizations who may be legally responsible . . . ."

---

[1] As explained in further detail below, the amounts GEICO paid under Policies 42 and 06 reflect a pro rata credit distribution of the $30,000 from Mr. Ashworth's policy.

¶ 9        One month later, on 12 May 2020, GEICO responded to Ms. Osborne's complaint and counterclaimed for declaratory judgment. GEICO moved for summary judgment as to all claims against it or, in the alternative, an order granting its claim for a declaratory judgment as to its duties and obligations for payments under the policies at issue. The trial court entered summary judgment in favor of GEICO on 11 September 2020. The trial court's order included a certification pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Ms. Osborne timely appealed.

## II.    ANALYSIS

¶ 10       Ms. Osborne argues the trial court erred in concluding she may recover only $130,000 from GEICO. She contends: (1) she is entitled to recover underinsured coverage in addition to uninsured coverage under Policy 65, and (2) GEICO improperly reduced its uninsured coverage by the amount remitted from Mr. Ashworth's policy. After careful interpretation of all relevant statutes *in pari materia*, we affirm in part and remand in part the trial court's summary judgment in favor of GEICO, as described below.

### A. Standard of Review

¶ 11       We review an appeal from summary judgment *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). "[S]ummary judgment is appropriate when the record establishes that there are no genuine issues of material fact and that any party is entitled to judgment as a matter of law." *Lunsford v. Mills*, 367 N.C. 618,

622, 766 S.E.2d 297, 301 (2014) (citing Rule 56(c)). We view the record "in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom." *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 8, 472 S.E.2d 358, 362 (1996) (citation omitted). Interpreting the Financial Responsibility Act and examining the terms of a motor vehicle insurance policy are also questions of law which we review *de novo*. *Lunsford*, 367 N.C. at 623, 766 S.E.2d at 301 (citations omitted).

¶ 12     "Statutes dealing with the same subject matter must be construed in pari materia, and harmonized, if possible, to give effect to each." *Hoffman v. Edwards*, 48 N.C. App. 559, 564, 269 S.E.2d 311, 313 (1980) (quotation marks and citation omitted). We presume that the General Assembly acts with full knowledge of prior and existing law. *Ridge Cmty. Inv'rs, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977) (citation omitted).

**B. Discussion**

¶ 13     The Financial Responsibility Act requires, among other things, that drivers maintain insurance at certain mandatory *minimum* coverage limits. *See* N.C. Gen. Stat. §§ 20-279.21(b)(2)-(3) (2021). The purpose of the Financial Responsibility Act "is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259,

265, 382 S.E.2d 759, 763 (1989) (citations omitted). We must interpret the Act "to provide the innocent victim with the fullest possible protection." *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989).

¶ 14        The terms of the Financial Responsibility Act are impliedly written into every policy of insurance as a matter of law. *N.C. Farm Bureau Mut. Ins. Co. v. Dana*, 379 N.C. 502, 2021-NCSC-161, ¶ 9 (citations omitted). "An insurance policy is a contract between the parties, and the intention of the parties is the controlling guide in its interpretation. It is to be construed and enforced in accordance with its terms insofar as they are not in conflict with pertinent statutes and court decisions." *Hawley v. Indem. Ins. Co.*, 257 N.C. 381, 387, 126 S.E.2d 161, 167 (1962) (citation omitted).

¶ 15        Though the purpose of the Financial Responsibility Act is to protect innocent victims of motor vehicle negligence, "that fact does not inevitably require that one interpret the relevant statutory language to produce the maximum possible recovery for persons injured as a result of motor vehicle negligence regardless of any other consideration." *N.C. Farm Bureau Mut. Ins. Co.,* ¶ 20. In this case, we must consider the amount and nature of coverage purchased under each of the three policies at issue. Ms. Osborne purchased the following coverage under Policy 42: uninsured motorist coverage up to $30,000 per person. Ms. Osborne's parents purchased the following coverage under Policy 65: combined uninsured and underinsured bodily injury liability coverage of $100,000 per person and a total limit of $300,000 per

accident. And Ms. Osborne's parents purchased the following coverage under Policy 06: uninsured motorist bodily injury liability of $30,000 for each person, with a total limit of $60,000 per accident.

¶ 16 The trial court concluded that Ms. Osborne is entitled to recover $130,000 from GEICO: $160,000 of total coverage ($100,000 under Policy 65, $30,000 under Policy 42, and $30,000 under Policy 06) less the $30,000 previously paid by GEICO from Mr. Ashworth's policy. GEICO contends the trial court decided this matter correctly and directs our attention to Subsection (n) of the Financial Responsibility Act, which specifies: "Nothing in this section shall be construed to provide greater amounts of uninsured or underinsured motorist coverage in a liability policy than the insured has purchased from the insurer under this section." § 20-279.21(n).

## 1. *Underinsured in Addition to Uninsured Coverage*

¶ 17 Because Policy 65 provides combined uninsured/underinsured coverage, GEICO contends, Ms. Osborne may not recover uninsured and underinsured coverage beyond the policy's combined coverage limits. Ms. Osborne, on the other hand, argues she is entitled to $160,000 of uninsured motorist coverage and an additional $100,000 of underinsured motorist coverage, less the $30,000 paid from Mr. Ashworth's policy, for a total of $230,000 in coverage. She argues Subsection (b)(4) of the Act mandates she recover the highest limits of *both* the underinsured *and* uninsured coverage in Policy 65, $100,000 each and totaling $200,000, because the

statute provides underinsured motorist coverage shall be "in addition to" uninsured coverage.

Subsection (b)(4) provides that the owner's liability policy

> [s]hall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this subsection. The limits of such underinsured motorist bodily injury coverage shall be equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy[.]

§ 20-279.21(b)(4).

Subsection (b)(2), cross-referenced by Subsection (b)(4), provides minimum limits of insurance coverage for any motor vehicle in the State as:

> . . . thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars ($25,000) because of injury to or destruction of property of others in any one accident[.]"

§ 20-279.21(b)(2). Subsection (b)(3), also cross-referenced by Subsection (b)(4), provides parameters for uninsured coverage: "The limits of such uninsured motorist bodily injury coverage shall be equal to the highest limits of bodily injury liability coverage for any one vehicle insured under the policy[.]" § 20-279.21(b)(3).

In simpler terms, if not as written by the General Assembly, substituting

"liability coverage" for (2) and "uninsured motorist coverage" for (3) in the text of Subsection (b)(4), results in the following reading: "such owner's policy of liability insurance . . . [s]hall, in addition to [liability coverage and uninsured motorist coverage], provide [underinsured motorist coverage]."

¶ 21      We are not persuaded that Subsection (b)(4) requires insurance companies to pay the combined limit amount for *both* uninsured *and* underinsured coverage regardless of the insurance policy language.  Rather, we interpret Subsection (b)(4) simply to reiterate that all drivers in North Carolina must purchase liability coverage of at least $30,000, § 20-279.21(b)(2), to include uninsured coverage at those limits, § 20-279.21(b)(3), and that drivers have the additional *option* to purchase underinsured coverage greater than the minimum liability limits, in the event a negligent driver's policy does not cover the cost of an insured's injuries or damage to their property.  Pursuant to Subsection (b)(4), an uninsured/underinsured combined limits policy written for $60,000 in combined coverage, for example, would necessarily include $30,000 of uninsured coverage and an additional $30,000 of underinsured coverage, unless otherwise specified in the policy.  In the event of a loss of equal to or greater than $60,000, involving both an uninsured and underinsured motorist, the insurer would be responsible for the combined limit of $60,000.

¶ 22      The terms of Policy 65 do not conflict with the Financial Responsibility Act or our caselaw.  Policy 65 provides uninsured/underinsured motorist coverage with a

combined limit of $100,000.[2] Ms. Osborne's parents, who purchased the policy, and GEICO entered into a contract providing that GEICO would be responsible for $100,000 total coverage, in the event of negligence of an uninsured motorist or underinsured motorist or both. The terms do not bind GEICO to provide $100,000 uninsured coverage and an additional $100,000 of underinsured coverage, for a total of $200,000. Though the purpose of the Financial Responsibility Act is "to provide protection for innocent victims of motor vehicle negligence," we will not interpret the relevant statutory language to produce the maximum possible recovery for Ms. Osborne regardless of the terms of the policy or our canons of statutory construction. *See N.C. Farm Bureau Mut. Ins. Co.,* ¶ 20; *Hoffman*, 48 N.C. App. at 564, 269 S.E.2d at 313.[3]

¶ 23    We affirm the trial court's declaratory judgment in favor of GEICO subject to the modifications we outline next.

---

[2] Though not dispositive, GEICO notes that, generally, combined uninsured/underinsured policies, like Policy 65, are funded by a single, combined premium based upon the maximum liability coverage. The State then imposes taxes based upon the the "gross premiums." *See* N.C. Gen. Stat. § 105-228.5(b)(1) (2021).

[3] In reaching this conclusion, we distinguish and do not rely on this Court's decision in *Monti v. United Services Auto. Ass'n*, 108 N.C. App. 342, 423 S.E.2d 530 (1992). In *Monti*, our Court considered whether a plaintiff could collect both uninsured and underinsured coverage from a single tortfeasor. 108 N.C. App. at 344-45, 423 S.E.2d at 531. The tortfeasor in *Monti* was covered by liability limits under an out-of-state policy providing less than the minimum coverage required in North Carolina. *Id.* We held that though the tortfeasor was both uninsured and underinsured in North Carolina, the plaintiff could recover either uninsured coverage or underinsured coverage from the tortfeasor, but not both. *Id.* at 345-46, 423 S.E.2d at 531-32.

### 2. *Coverage Less the Amount Received from Underinsured's Policy*

¶ 24    Ms. Osborne contends the Financial Responsibility Act precludes GEICO from reducing its $160,000 uninsured coverage by the $30,000 GEICO tendered from Mr. Ashworth's policy.  We agree.

¶ 25    Subsection (b)(4) provides: "[T]he limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident." § 20-279.21(b)(4).  Consistent with the statute, Ms. Osborne concedes she is entitled only to $70,000 of the total $100,000 underinsured limits under Policy 65, allowing GEICO a credit for Mr. Ashworth's $30,000 liability limits.  However, she contends the Financial Responsibility Act does not authorize a set off for the amount of *un*insured coverage based on the liability payment of Mr. Ashworth, an underinsured motorist.

¶ 26    GEICO argues the terms of its policies, read in concert with the statute, entitle it to a credit for the payment Ms. Osborne received from Mr. Ashworth's liability policy.  Policies 06 and 65 provide: "The limits of bodily injury liability shown in the [Schedule or] Declarations page for each person and each accident for this coverage shall be reduced by all sums: 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."  (Alteration in original.)

Policy 42 employs slightly different language, "The limit of liability otherwise applicable under this coverage shall be reduced by all sums: 1. Paid because of bodily injury . . . by or on behalf of persons or organizations who may be legally responsible," to create the same credit.

¶ 27 Interpreting Subsection (b)(4), this Court has held *under*insured carriers are entitled to set off the amount received by a claimant from a tortfeasor's liability carrier against any underinsured amounts the injured party's carrier owed. *Onley v. Nationwide Mut. Ins. Co.*, 118 N.C. App. 686, 690, 456 S.E.2d 882, 885 (1995) ("Under the terms of the statute, a[n] [underinsured] carrier is entitled to credit for the amounts paid to a claimant under the tortfeasor's liability policy." (citation omitted)); *Falls v. N.C. Farm Bureau Mut. Ins. Co.*, 114 N.C. App. 203, 208, 441 S.E.2d 583, 586 (1994) ("[T]he primary provider of [underinsured] coverage . . . is entitled to the credit for the liability coverage.").

¶ 28 For example, in *Falls*, the tortfeasor driver had the minimum amount of liability insurance mandated by our statutes at the time, $25,000, and the injured party was covered by an underinsured motorist policy with limits of liability of $50,000 per person. 114 N.C. App. at 204-05, 441 S.E.2d at 583-84. On appeal, this Court rejected the argument that the injured party's primary insurance carrier was not entitled to a credit for $25,000 in the tortfeasor's liability coverage tendered. *Id.* at 208, 441 S.E.2d at 585-86. We interpreted Subsection (b)(4) to conclude that the

primary provider of underinsured coverage was entitled to a credit for the amount received under the tortfeasor's policy. *Id.*, 441 S.E.2d at 586. More recently, in *N.C. Farm Bureau Mut. Ins. Co. v. Dana*, the Supreme Court considered the reduction of the insurer's per-person, as opposed to per-accident, liability by the amount tendered by the underinsured's policy. *N.C. Farm Bureau Mut. Ins. Co.*, ¶¶ 4-5 ("[The insurance provider] offered to pay the full per-person limit to both [injured parties], less the amount that had been received from [another provider's] liability coverage.").

Our Supreme Court has also held our General Statutes authorize an insurance carrier to reduce *un*insured motorist coverage available by the amount of workers' compensation benefits an injured party received. *Liberty Mut. Ins. Co. v. Ditillo*, 348 N.C. 247, 253, 499 S.E.2d 764, 768 (1998) ("[Uninsured] carriers are permitted to reduce coverage for [the estates of the decedent parties] by the amount of workers' compensation benefits paid or payable." (citing N.C. Gen. Stat. § 20-279.21(e) (1997)). Subsection (e) explicitly provides for this set off:

> Uninsured or underinsured motorist coverage that is provided as part of a motor vehicle liability policy shall insure that portion of a loss uncompensated by any workers' compensation law and the amount of an employer's lien determined pursuant to G.S. 97-10.2(h) or (j). In no event shall this subsection be construed to require that coverage exceed the applicable uninsured or underinsured coverage limits of the motor vehicle policy or allow a recovery for damages already paid by workers' compensation.

§ 20-279.21(e) (2021).

¶ 30        But the Financial Responsibility Act does *not* authorize a set off for *un*insured coverage from payment received by a tortfeasor's policy. *Compare* § 20-279.21(b)(4) (providing for a credit from underinsured coverage) *with* § 20-279.21(b)(3) (omitting the same in the uninsured provision of the statute). We cannot discern any underlying policy reason or legislative intent for this omission. However, our canons of statutory construction require us to presume that the General Assembly acts with full knowledge of prior and existing law. *See Ridge Cmty. Inv'rs, Inc.*, 293 N.C. at 695, 239 S.E.2d at 570. We therefore assume the legislature had full knowledge it provided for a credit in the uninsured context from other collateral sources, namely workers' compensation benefits, and for underinsured coverage against other liability policies, when it authored Subsection (b)(3) and did not provide the same set off for uninsured coverage.

¶ 31        We hold GEICO, providing uninsured coverage, was not entitled to a set off for payment Ms. Osborne received from Mr. Ashworth's policy. Thus, we modify the judgment of the trial court to order GEICO to pay an additional $30,000 ($160,000 total) to Ms. Osborne.

**C. Bad Faith and Unfair Trade Practices Claims**

¶ 32        Ms. Osborne also argues we should reverse the trial court's grant of summary judgment on her bad faith refusal to settle and unfair practices claims because there

remains a genuine issue of fact about GEICO's conduct. In the alternative, Ms. Osborne requests we remand to the trial court to allow for discovery under Rule 56(f) of our Rules of Civil Procedure to allow her to develop evidence necessary to maintain these claims. We will not.

¶ 33        As reflected by this Court's detailed analysis of the applicable statutes and the language of the policies, the absence of controlling caselaw regarding the difference between the set off allowed for underinsured motorist coverage versus uninsured motorist coverage, and the trial court's conclusion allowing a set off for the uninsured coverage provider, we cannot conclude that Ms. Osborne has raised or even forecast evidence to raise a disputed issue of genuine fact regarding whether GEICO acted in bad faith or engaged in unfair trade practices in denying further coverage.

## III.    CONCLUSION

¶ 34        For the reasons set forth above, we affirm the trial court's order granting summary judgment to GEICO in part and remand in part for modifications not inconsistent with this opinion.

AFFIRMED IN PART; REMANDED IN PART.

Judges ARROWOOD and HAMPSON concur.