HUNTER, JR., Robert N., Judge.
*626 Nationwide Affinity Insurance Company of America ("Plaintiff") appeals from an order granting Le Bei, Administrator of the Estate of Tei Paw, and Thla Aye's, Administrator of the Estate of Khai Hne, (collectively "Defendants") motion for summary judgment and denying Plaintiff's motion for summary judgment. On appeal, Plaintiff argues the trial court improperly allowed Defendants to recover underinsured motorist coverage ("UIM"). We affirm.
*627 I. Factual and Procedural Background
On 3 May 2016, Plaintiff filed a complaint for declaratory judgment, seeking a declaration regarding automobile insurance issued by Plaintiff to Sa Hietha. The complaint alleged the following narrative.
On 26 September 2014, around 11:00 p.m., Hietha drove his Honda Pilot on I-77, near Fort Mill, South Carolina. Hietha traveled northbound, in the far, right lane. Tei Paw, Khia Hne, Khia Tlo, Tin Aung, and Nu Cing rode as passengers in Hietha's vehicle. David Hope drove an American Red Cross bus ahead of Hietha, in the same lane. Mabel Gutierrez drove a Honda Accord in the neighboring lane, also northbound.
*253 Hietha traveled too quickly for the conditions.[1] Consequently, he collided with the rear of the American Red Cross bus. Hietha's vehicle then "spun into the adjacent lane in front of" and collided with Gutierrez's Honda Accord. Tin Aung and Nu Cing suffered personal injuries from the accident. Tei Paw, Khai Hne, and Khai Tlo died as a result from injuries sustained from the accident.
From 28 May 2014 to 28 November 2014, Plaintiff insured Hietha's vehicle through a personal automobile insurance policy ("Hietha policy"). The Hietha policy provided liability insurance coverage with limits of $50,000 per person and $100,000 per accident. The policy also provided UIM coverage with limits of $50,000 per person and $100,000 per accident.
Plaintiff distributed the following amounts under the maximum per accident limit of liability coverage: $26,000 to Tei Paw; $26,000 to Khai Hne; $26,000 to Khai Tlo; $13,000 to Tin Aung; $5,000 to Mabel Gutierrez; $2,500 to David Hope; and $1,500 to Nu Cing. The parties disagreed on whether the passengers were entitled to recover under Hietha's UIM coverage for the difference between the amounts received under the liability coverage and the per person limits of UIM coverage. Thus, Plaintiff requested the trial court declare UIM under Hietha's policy "[wa]s not triggered for any of the Defendants under the Policy."
On 25 July 2016, Defendants filed their answer. Defendants asserted they were entitled to UIM coverage under the Hietha policy. At the time *628 of the accident, Hne had a separate insurance policy with Plaintiff. This separate policy provided UIM coverage with limits of $50,000 per person and $100,000 per accident. Paw also had a separate insurance policy with Plaintiff. Paw's policy provided coverage with UIM limits of $100,000 per person and $300,000 per accident. Defendants contended the UIM coverage under their separate policies should be "stacked" with the UIM coverage under the Hietha policy.
On 30 January 2017, the trial court held a hearing for approval of proposed settlements. In orders entered 31 January 2017, the trial court approved of settlements of $30,800 of liability-policy funds to Defendant Aye and $1,000 of liability-policy funds to Defendant Bei. In both orders, the trial court specifically stated the settlements "shall not affect any rights of [Defendants] to pursue any underinsured motorist claims against any party, including ... Sa Hietha[.]"
On 13 February 2017, Defendants filed a joint motion for summary judgment. Defendants requested the trial court "declare that they are entitled to UIM coverage under Sa Hietha's policy, in amounts sufficient to exhaust said UIM coverage[.]" On 1 May 2017, Plaintiff filed its own motion for summary judgment. Plaintiff contended the multiple claimant exception in the Financial Responsibility Act precluded Defendants from recovering UIM coverage under the Hietha policy.
On 24 May 2017, the trial court held a hearing on the parties' motions. In an order entered 17 July 2017, the trial court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. The trial court ordered "the movant-Defendants are entitled to payment under at-fault Sa Hietha's per-person underinsured motorist coverage provided by Plaintiff, subject to any applicable credits." On 15 August 2017, Plaintiff filed timely notice of appeal.
II. Standard of Review
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ).
*254 "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." Craig v. New Hanover Cty. Bd. of Educ. , 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (internal quotation marks and citation omitted).
*629 III. Analysis
On appeal, Plaintiff contends the trial court erred by granting summary judgment in favor of Defendants. Specifically, Plaintiff argues the multiple claimant exception in N.C. Gen. Stat. § 20-279.21(b)(4) (2017) applies to the matters at hand. Accordingly, Plaintiff contends the trial court erred in allowing Defendants to recover UIM coverage under Hietha's policy. We disagree.
"Statutory interpretation begins with 'the cardinal principle of statutory construction ... that the intent of the legislature is controlling. In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish.' " Benton v. Hanford , 195 N.C. App. 88, 92, 671 S.E.2d 31, 34 (2009) (brackets omitted) (ellipses in original) (quoting State ex rel. Util. Comm'n v. Pub. Staff , 309 N.C. 195, 210, 306 S.E.2d 435, 443-44 (1983) ). Moreover, "[l]egislative intent can be ascertained not only from the phraseology of the statute but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other." Sutton v. Aetna Cas. & Sur. Co. , 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (citations omitted), superseded by statute on other grounds , N.C. Farm Bureau Mut. Ins. Co. v. Stamper , 122 N.C. App. 254, 468 S.E.2d 584, 585-86 (1996). "The Court will not adopt an interpretation which results in injustice when the statute may reasonably be otherwise consistently construed with the intent of the act." Nationwide Mut. Ins. Co. v. Chantos , 293 N.C. 431, 440, 238 S.E.2d 597, 603 (1977) (citation omitted).
At the outset, our analysis is guided by the "avowed purpose" of the Financial Responsibility Act, which is:
to compensate the innocent victims of financially irresponsible motorists. The Act is remedial in nature and is to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished. The purpose of the Act, we have said, is best served when every provision of the Act is interpreted to provide the innocent victim with the fullest possible protection.
Liberty Mut. Ins. Co. v. Pennington , 356 N.C. 571, 573-74, 573 S.E.2d 118, 120 (2002) (citations, quotation marks, ellipses, and brackets omitted).
The Financial Responsibility Act permits interpolicy stacking of UIM coverage to calculate the "applicable limits of underinsured motorist coverage for the vehicle involved in the accident."
*630 N.C. Farm Bureau Mut. Ins. Co. v. Bost , 126 N.C. App. 42, 50-51, 483 S.E.2d 452, 458 (1997). After stacking, the parties use the stacked amount to determine if the tortfeasor's vehicle is an underinsured highway vehicle, under N.C. Gen. Stat. § 20-279.21(b)(4). Id. at 51, 483 S.E.2d at 458.
Our case law and a statutory amendment in 2004 shaped the relevant definition of an underinsured highway vehicle under N.C. Gen. Stat. § 20-279.21(b)(4). First, our Court decided Ray v. Atlantic Casualty Insurance Co. , 112 N.C. App. 259, 435 S.E.2d 80 (1993). In Ray , another vehicle crossed the centerline and struck one plaintiff's vehicle. Id. at 260, 435 S.E.2d at 80. One plaintiff, and the two passengers in her vehicle, all suffered injuries. See id. at 260, 435 S.E.2d at 80. Aetna Insurance Company insured the tortfeasor under a vehicle insurance policy. Id. at 260, 435 S.E.2d at 80. The policy provided for coverage with a liability limit of $100,000 per person and $300,000 per accident. Id. at 260, 435 S.E.2d at 80. The defendant insurer insured the plaintiff. Id. at 260, 435 S.E.2d at 80. Defendant's policy provided for coverage with a UIM limit of $100,000 per person and $300,000 per accident. Id. at 260-61, 435 S.E.2d at 80.
Aetna paid an occupant in the tortfeasor's car $98,000, pursuant to the liability coverage under the policy. Id. at 261, 435 S.E.2d at 80-81. Thus, $202,000 remained in liability coverage, to be split amongst the three plaintiffs-the *255 driver and her two passengers. Id. at 260-61, 435 S.E.2d at 81. Plaintiffs sought a judgment declaring defendant insurer's policy provided for UIM coverage. Id. at 261, 435 S.E.2d at 81. Defendant insurer filed a motion for summary judgment, which the trial court granted. Id. at 261, 435 S.E.2d at 81. Plaintiffs appealed. Id. at 260, 435 S.E.2d at 80.
This Court analyzed whether an underinsured vehicle, as defined in N.C. Gen. Stat. § 20-279.21(b)(4), included "a tortfeasor's vehicle whose available liability insurance is less than the relevant UIM coverage." Id. at 261, 435 S.E.2d at 81. At the time our Court decided Ray , N.C. Gen. Stat. § 20-279.21(b)(4) provided UIM coverage applies when "all liability bonds or insurance policies providing coverage for bodily injured caused by ... the underinsured highway vehicle have been exhausted." Id. at 261, 435 S.E.2d at 81 (emphasis omitted) (ellipses in original). Thus, the language of the statute "required this Court to base this determination on a comparison of the tortfeasor's overall liability coverage (not the actual liability payment ) to the victim's UIM coverage." Integon Nat'l Ins. Co. v. Maurizzio , 240 N.C. App. 38, 42, 769 S.E.2d 415, 419 (2015) (analyzing Ray 's holding and the subsequent amendment of N.C. Gen. Stat. § 20-279.21(b)(4) ).
*631 Accordingly, this Court held plaintiffs were not entitled to UIM coverage under defendant insurer's policy, because the liability coverage and the UIM coverage provided were the same. Ray , 112 N.C. App. at 262, 435 S.E.2d at 81. Thus, the tortfeasor's vehicle did not meet the definition of an underinsured highway vehicle. Id. at 262, 435 S.E.2d at 81.
In 2004, in response to Ray , the General Assembly amended N.C. Gen. Stat. § 20-279.21(b)(4). The General Assembly added two sentences, and the statute now reads, inter alia :
An "uninsured motor vehicle," as described in subdivision (3) of this subsection, includes an "underinsured highway vehicle," which means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an "underinsured highway vehicle" if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy. Notwithstanding the immediately preceding sentence, a highway vehicle shall not be an "underinsured motor vehicle" for purposes of an underinsured motorist claim under an owner's policy insuring that vehicle unless the owner's policy insuring that vehicle provides underinsured motorist coverage with limits that are greater than that policy's bodily injury liability limits.
N.C. Gen. Stat. § 20-279.21 (b)(4) (emphasis added).
Following the amendment, our Court twice examined the added two sentences and their effect on claimants' right to recover UIM. First, in Benton , plaintiff suffered injuries as a result of a single car accident.[2]
*632 195 N.C. App. at 89, 671 S.E.2d at 32. Nationwide insured plaintiff under a vehicle insurance policy. Id. at 89-90, 671 S.E.2d at 32. The policy provided for coverage with a liability limit of $50,000 per person and a UIM limit of $50,000 per person. Id. at 90, 671 S.E.2d at 32. Defendant insurer, Progressive Southeastern Insurance Company, also insured plaintiff, under a household resident policy. Id. at 90, 671 S.E.2d at 32. This policy provided UIM coverage of $100,000 per person. Id. at 90, 671 S.E.2d at 32.
Nationwide paid plaintiff $50,000, pursuant to the liability limit. Id. at 90, 671 S.E.2d at 32. Defendant insurer contended the vehicle *256 did not meet the definition of an "underinsured highway vehicle" because the Nationwide policy provided UIM coverage with limits equal to that of the policy's liability limits. Id. at 91, 671 S.E.2d at 33.
Our Court disagreed with defendant insurer. The Court, while specifically highlighting it "must interpret the provisions of the Act liberally in order to provide the innocent victim with the fullest possible protection," held the second sentence of the amendment did not apply. Id. at 93-94, 671 S.E.2d at 34-35 (brackets omitted). The Court titled the second sentence of the amendment the "multiple claimant exception" and concluded the sentence only applies to accidents with multiple claimants. Id. at 94, 671 S.E.2d at 34-35. Since the accident involved only one claimant, the Court used the general definition of an underinsured highway vehicle and concluded the vehicle met said definition. Id. at 94, 671 S.E.2d at 35.
Next, in Maurizzio , three family members, Destany, Daijah, and Desiree', were involved in a single car accident. 240 N.C. App. at 39, 769 S.E.2d at 417. Destany drove the vehicle owned by Suzanne Maurizzio, and Daijah and Desiree' rode as passengers. Id. at 39, 769 S.E.2d at 417. Desiree' and Daijah suffered injuries. Id. at 39, 769 S.E.2d at 417.
At the time of the accident, Suzanne insured the vehicle through a policy with plaintiff insurer. Id. at 39, 769 S.E.2d at 417. The policy provided both liability and UIM coverage with limits of $50,000 per person and $100,000 per accident. Id. at 39, 769 S.E.2d at 417. The parties settled Desiree's claim within the liability coverage limits of the policy. Id. at 39, 769 S.E.2d at 417.
Daijah's injuries resulted in an excess of $200,000 of expenses. Id. at 39, 769 S.E.2d at 417. Plaintiff insurer tendered the $50,000 per person liability limit. Id. at 39, 769 S.E.2d at 417. Daijah's parents also had an insurance policy with plaintiff insurer. Id. at 39, 769 S.E.2d at 417. This policy provided UIM coverage with limits of $50,000 per person and $100,000 per accident. Id. at 39, 769 S.E.2d at 417-18.
*633 Plaintiff insurer sought a declaratory judgment, declaring Daijah's parents' policy did not provide UIM coverage for Daijah's injuries from the accident. Id. at 39, 769 S.E.2d at 418. Defendants moved for summary judgment and contended the UIM coverage under the parents' policy could be stacked with the UIM coverage under Suzanne's policy. Id. at 39, 769 S.E.2d at 418. Plaintiff insurer filed its own motion for summary judgment, asserting the multiple claimant exception applied, and, thus, the claimants could not stack the UIM coverage from Suzanne's policy with any other UIM coverage. Id. at 40, 769 S.E.2d at 418. The trial court denied plaintiff's motion for summary judgment and granted defendants' motion for summary judgment. Id. at 40, 769 S.E.2d at 418. The trial court declared plaintiff insurer's policies, to Suzanne and Daijah's parents, provided $100,000 in UIM coverage. Id. at 40, 769 S.E.2d at 418.
Plaintiff insurer appealed. Id. at 40, 769 S.E.2d at 418. Plaintiff insurer argued the multiple claimant exception applied because two people were injured in the accident. Id. at 40, 769 S.E.2d at 418. Our Court summarized the effect of amendment as providing "an additional definition of 'underinsured highway vehicle' for situations where multiple claimants seek liability funds." Id. at 42, 769 S.E.2d at 419. The Court explained:
[t]he multiple claimant exception prevents an increase in liability or UIM exposure of the carrier providing coverage for the tortfeasor's vehicle. The exception states a vehicle is not an "underinsured motor vehicle" if the owner's policy provides UIM coverage with limits, which are less than or equal to that policy's bodily injury liability limits.
Id. at 43, 769 S.E.2d at 420 (citing N.C. Gen. Stat. § 20-279.21(b)(4) ).
The Court held the multiple claimant exception was not triggered "simply because there were two injuries in an accident." Id. at 44, 769 S.E.2d at 420. The Court limited the exception's applicability to "when the amount paid to an individual claimant is less than the claimant's limits of UIM coverage after liability payments to multiple claimants." Id. at 44, 769 S.E.2d at 420-21 (citation omitted).
Plaintiff insurer and Desiree' settled her claim in the per person liability coverage.
*257 Id. at 44, 769 S.E.2d at 421. Thus, the liability payment did not reduce the liability coverage available for Daijah's claim. Id. at 44, 769 S.E.2d at 421. Accordingly, the multiple claimant exception did not apply. Id. at 44-45, 769 S.E.2d at 421.
Turning to the case at bar, the parties disagree on the issue before our Court. Plaintiff contends the case is an issue of first impression and *634 is not question of stacking insurance policies. Additionally, Plaintiff asserts the General Assembly sought "to broaden UIM coverage only for occupants of an innocent operator's vehicle ... and expressly excludes occupants of a tortfeasor's vehicle from the expanded UIM coverage[.]"
Defendants disagree and argue the issue is not one of first impression. Instead, Defendants assert the issue only requires this Court to apply settled law permitting stacking of insurance policies. Defendants further contend Plaintiff's interpretation would "pervert the statute by adding a restrictive distinction that would punish innocent victims of a tortfeasor's negligence by exempting the latter's underinsured motorist coverage from his own passenger's claims."
We agree with Defendants' framing of the issue and conclude the multiple claimant exception does not apply to the case sub judice . The General Assembly added the multiple claimant exception post- Ray in an effort to further protect innocent victims of financially irresponsible motorists. To construe the multiple claimant exception to limit UIM recovery to innocent occupants of a tortfeasor's vehicle, while allowing recovery by innocent occupants of an innocent operator's vehicle, would be "an interpretation which results in injustice[.]" Chantos , 293 N.C. at 440, 238 S.E.2d at 603 (citation omitted).
Keeping in mind we are required to liberally construe the Act, we decline to apply the multiple claimant exception in a way which would reduce compensation to innocent victims and conflict with the avowed purpose of the Act. Pennington , 356 N.C. at 573, 573 S.E.2d at 120 (citation omitted). Moreover, this holding comports with the intent of the legislature, and we considered the "nature and purpose of the act and the consequences which would follow its construction one way or the other" and "the language of the statute, the spirit of the statute, and what it seeks to accomplish." Sutton , 325 N.C. at 265, 382 S.E.2d at 763 (citations omitted); Benton , 195 N.C. App. at 92, 671 S.E.2d at 34 (quotation marks and citation omitted).
Because we hold the multiple claimant exception does not apply, the trial court properly permitted Defendants to recover UIM coverage under their own policies and the UIM coverage under Hietha's policy with Plaintiff. Accordingly, the trial court properly granted Defendants' motion for summary judgment and properly denied Plaintiff's motion for summary judgment.
IV. Conclusion
For the foregoing reasons, we affirm the trial court's order.
*635 AFFIRMED.
Judge ZACHARY concurs.
Judge DIETZ concurs in a separate opinion.

The complaint provides no other details for Hietha's driving beyond that he "traveled too fast for the conditions[.]" Pursuant to Rule 9(c)(1) of the North Carolina Rules of Appellate Procedure, the record includes a narrative form of matters presented at the summary judgment hearing. N.C. R. App. P. 9(c)(1) (2017). The narrative includes the following, additional details. Hope, driving the American Red Cross bus, slowed down in the right lane, to exit I-77. Hietha "travell[ed] too fast for conditions (inattention) [and] ran into the rear of" the bus.

In Benton , there were actually two plaintiffs, the other plaintiff being the driver of the vehicle.