IN THE SUPREME COURT OF NORTH CAROLINA

No. 281A22

Filed 22 March 2024

NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC.

v.

MATTHEW BRYAN HEBERT

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 285 N.C. App. 159, 877 S.E.2d 400 (2022), affirming an order denying plaintiff's motion for judgment on the pleadings and granting judgment on the pleadings for defendant entered on 21 December 2021 by Judge Vince M. Rozier, Jr., in Superior Court, Wake County. On 1 March 2023, the Supreme Court allowed plaintiff's petition for discretionary review as to additional issues pursuant to N.C.G.S. § 7A-31. Heard in the Supreme Court on 21 February 2024.

*Lipscomb Law Firm, by William F. Lipscomb, for plaintiff-appellant.*

*Law Offices of James Scott Farrin, by Preston W. Lesley, for defendant-appellee.*

*Pinto Coates Kyre & Bowers, PLLC, by Jon Ward and Paul D. Coates, and Law Offices of C. Douglas Maynard, Jr., PLLC, by C. Douglas Maynard, Jr., for North Carolina Advocates for Justice, amicus curiae.*

NEWBY, Chief Justice.

Pursuant to subdivision 20-279.21(b)(4) of the Motor Vehicle Safety and Financial Responsibility Act of 1953 (FRA), a claimant's underinsured motorist (UIM) coverage must be "activated" for his UIM claim to proceed. At the "activation stage,"

the claimant must show that the tortfeasor's car satisfies one of the statutory definitions of an "underinsured highway vehicle." Generally, a tortfeasor's vehicle is an underinsured highway vehicle if the tortfeasor's liability limits are less than the claimant's "applicable limits of [UIM] coverage for the vehicle involved in the accident and insured under the owner's policy." N.C.G.S. § 20-279.21(b)(4) (2019). If an accident results in more than one injured person, the tortfeasor's vehicle may also qualify as an underinsured highway vehicle if "the total amount [of liability coverage] actually paid to" a single claimant is less than that claimant's "applicable limits of [UIM] coverage for the vehicle involved in the accident and insured under the owner's policy." *Id.*[1]

In this case we must determine whether defendant, who owned the at-fault vehicle but was not the tortfeasor, may stack multiple UIM coverage limits inter-policy—including those that do not insure the vehicle involved in the accident—to qualify his vehicle as an underinsured highway vehicle for his UIM claim brought under his policy insuring his vehicle. Although the FRA is to be "liberally construed" to accomplish its remedial purpose, this Court may only employ that canon of construction if the FRA's plain language is ambiguous or susceptible to multiple

---

[1] In 2023, the General Assembly amended the definitions of "underinsured highway vehicle," which will take effect on 1 January 2025. An Act to Make Various Changes to the Insurance Laws of North Carolina, to Amend the Insurance Rate-Making Laws, and to Revise High School Interscholastic Athletics, S.L. 2023-133, § 12(d), (i), https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2023-2024/SL2023-133.pdf. This opinion takes no position on the interpretation of the statute as amended.

reasonable interpretations. Here we conclude that subdivision 20-279.21(b)(4)'s plain language is clear and unambiguous: the only UIM limits that may be considered at the activation stage are those "for the vehicle involved in the accident and insured under the owner's policy." *Id.* Accordingly, we conclude that the Court of Appeals erred when it permitted defendant to "stack and compare" at the activation stage— that is, when it allowed defendant to aggregate inter-policy all of the UIM policies available to defendant, regardless of their connection to the car involved in the accident, before comparing his UIM limits to the at-fault vehicle's liability limits.

Without inter-policy stacking, defendant's vehicle, which was the at-fault vehicle, does not qualify as an underinsured highway vehicle for purposes of defendant's UIM claim brought under his own policy. Accordingly, we reverse the decision of the Court of Appeals and remand this case with instructions to remand the matter to the trial court for entry of judgment on the pleadings in plaintiff's favor.

In 2020, defendant owned a 2004 Chevrolet Malibu.[2] Plaintiff issued defendant a personal automobile policy covering defendant's car. Defendant's policy provided

---

[2] This case comes to this Court following plaintiff's motion for judgment on the pleadings. Accordingly, "[a]ll well pleaded factual allegations in the nonmoving party's pleadings [i.e., defendant's answer] are taken as true[,] and all contravening assertions in the movant's pleadings [i.e., plaintiff's complaint] are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). Review is "limited to the facts properly pleaded in the pleadings . . . , inferences reasonably to be drawn from such facts[,] and matters of which the court may take judicial notice. An exhibit, attached to and made a part of the pleading, is so considered." *Wilson v. Crab Orchard Dev. Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 878–79 (1970) (citations omitted). To the extent that defendant's answer admitted or did not deny the complaint's factual allegations, however, those facts are deemed established. *See* N.C.G.S. § 1A-1, Rule 8(d) (2021) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not

liability coverage with limits of $50,000.00 per person and $100,000.00 per accident. It also provided UIM coverage with limits of $50,000.00 per person and $100,000.00 per accident. Additionally, defendant was named as an insured on his parents' personal automobile policy, which was also issued by plaintiff. Defendant qualified for UIM coverage under his parents' personal auto policy, which provided UIM coverage with limits of $100,000.00 per person and $300,000.00 per accident. Defendant's parents' policy, however, did not insure defendant's car.[3]

On 21 October 2020, Sincere Terrell Corbett was driving defendant's car, and defendant, Chase Everette Hawley, and Jamar Direll Hicks, Jr., were passengers. Defendant's car collided with another vehicle, which was owned and operated by William Rayvoin Coats.[4] As a result of that collision, Corbett and Hicks died, and

---

denied in the responsive pleading."). The facts and permissible inferences therefrom are viewed in the light most favorable to the nonmoving party. *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.

[3] Defendant denied plaintiff's allegation that defendant's car was not insured by his parents' policy. Defendant's parents' policy, however, was attached as an exhibit to plaintiff's complaint, and defendant admitted that the exhibit was a true and certified copy of his parents' policy. The declarations page of defendant's parents' policy does not list defendant's car as a covered vehicle. To the extent that defendant's characterization of his parents' policy conflicts with the terms of the policy, the policy controls. *See Wilson*, 276 N.C. at 206, 171 S.E.2d at 879 ("The terms of [an attached] exhibit control other allegations of the pleading attempting to paraphrase or construe the exhibit, insofar as these are inconsistent with its terms.").

[4] Defendant denied that Coats was the owner and operator of the other car "due to lack of knowledge." He admitted in his answer, however, that plaintiff paid Coats as part of its payout of defendant's liability coverage. Thus, it is reasonable to infer from the admitted facts that Coats was the owner and operator of the other car.

defendant and Hawley sustained significant injuries. Coats was also injured.[5] Neither party disputes that defendant's car was the at-fault vehicle and that Corbett, not defendant, was the tortfeasor.

After the accident, plaintiff tendered the $100,000.00 per accident limit of liability coverage under defendant's policy, and the four claimants agreed to divide the payout as follows: $49,500.00 to Hicks's estate, $49,500.00 to Hawley, $900.00 to Coats, and $100.00 to defendant. Plaintiff also paid defendant $99,900.00 in UIM coverage under defendant's parents' policy.[6]

On 29 July 2021, plaintiff filed a complaint seeking a judgment declaring that defendant's UIM coverage under his policy is unavailable because defendant's car, as the at-fault vehicle, does not qualify as an underinsured highway vehicle for his UIM claim brought under his own policy. On 15 September 2021, defendant filed his answer, requesting that he be paid the UIM coverage under his policy insuring his

---

[5] Defendant also denied that Coats was injured "due to lack of knowledge." Because defendant admitted that plaintiff paid Coats as part of the liability payout, however, it is reasonable to infer from the admitted facts that Coats was injured.

[6] In its complaint, plaintiff conceded that defendant's car qualified as an underinsured motor vehicle for defendant's UIM claim brought under defendant's parents' policy. It further conceded that it "offered, and is in the process of paying, the $99,900[.00] UIM coverage from the parents' policy." Plaintiff calculated the $99,900.00 UIM payment by deducting the $100.00 payment from defendant's liability coverage from the $100,000.00 per person UIM limit under defendant's parents' policy.

Before this Court, the parties only dispute whether defendant activated his UIM coverage under his own policy such that he could bring a UIM claim under his own policy. Accordingly, we consider this case as it was presented, and the only question before us is whether defendant's car qualified as an underinsured highway vehicle for purposes of a UIM claim brought under defendant's own policy. *See* N.C. R. App. P. 28(a), (b)(6), (c).

car. On 30 September 2021, plaintiff moved for judgment on the pleadings pursuant to North Carolina Rule of Civil Procedure 12(c). On 20 December 2021, the trial court denied plaintiff's motion for judgment on the pleadings, and it granted judgment on the pleadings for defendant. Plaintiff appealed.

The Court of Appeals affirmed in a divided decision. *N.C. Farm Bureau Mut. Ins. Co. v. Hebert*, 285 N.C. App. 159, 165, 877 S.E.2d 400, 404 (2022). "[G]uided by the 'avowed purpose' of the Financial Responsibility Act," the majority declined to construe subdivision 20-279.21(b)(4) "in a manner that would . . . limit the recovery of innocent occupants of a tortfeasor's vehicle." *Id.* at 163–64, 877 S.E.2d at 403–04. Applying the stack and compare rule, the majority permitted defendant to "stack" his own policy's UIM limits with his parents' policy's UIM limits before comparison to defendant's policy's liability limits. *Id.* at 163–65, 877 S.E.2d at 403–04 (first citing *N.C. Farm Bureau Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 50–51, 483 S.E.2d 452, 458 (1997), and then citing *Nationwide Affinity Ins. Co. of Am. v. Le Bei*, 259 N.C. App. 626, 630, 816 S.E.2d 251, 254 (2018)). After doing so, the majority concluded that defendant's car satisfied subdivision 20-279.21(b)(4)'s general definition of an underinsured highway vehicle,[7] thus activating his policy's UIM coverage. *See id.* at

---

[7] Under the general definition, a vehicle is an underinsured highway vehicle if (1) it is "a highway vehicle with respect to [its] ownership, maintenance, or use," and (2) "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of [UIM] coverage for the vehicle involved in the accident and insured under the owner's policy." N.C.G.S. § 20-279.21(b)(4) (2019).

164–65, 877 S.E.2d at 403–04. Furthermore, the majority reasoned that subdivision 20-279.21(b)(4)'s "multiple claimant exception" did not apply to defendant's UIM claim simply because there were multiple injuries in the accident.[8] *Id.* at 164, 877 S.E.2d at 404 (citing *Integon Nat'l Ins. Co. v. Maurizzio*, 240 N.C. App. 38, 44, 769 S.E.2d 415, 420 (2015)). Because it concluded that the multiple claimant exception did not apply, the majority further stated that the multiple claimant exception's caveat sentence[9] did not prevent defendant's vehicle from qualifying as an underinsured motor vehicle for his claim under his policy insuring that car. *Id.* Accordingly, the majority affirmed the judgment on the pleadings in defendant's favor. *Id.* at 165, 877 S.E.2d at 404.

Conversely, the dissent first concluded that defendant's car did not qualify as an underinsured highway vehicle under subdivision 20-279.21(b)(4)'s general definition because the liability limits of defendant's policy covering his car were equal to its UIM limits. *Id.* at 165, 877 S.E.2d at 404–05 (Arrowood, J., dissenting). The

---

[8] Under the multiple claimant exception, a vehicle is also an underinsured highway vehicle if (1) a "[UIM] claim [is] asserted by a person injured in an accident where more than one person is injured," and (2) "the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy." N.C.G.S. § 20-279.21(b)(4) (2019).

[9] The caveat sentence to the multiple claimant exception provides that when a UIM claimant proceeding under the multiple claimant exception brings a UIM claim under an owner's policy insuring the at-fault and allegedly underinsured vehicle, the vehicle is not considered underinsured "unless the owner's policy insuring that vehicle provides [UIM] coverage with limits that are greater than that policy's bodily injury liability limits." N.C.G.S. § 20-279.21(b)(4) (2019).

dissent then considered the multiple claimant exception and similarly concluded that defendant's car did not qualify as an underinsured highway vehicle for purposes of his UIM claim brought under his own policy insuring his car because his policy's liability limits were the same as the UIM limits. *Id.* at 165–66, 877 S.E.2d at 405. Although the dissent recognized that "inter-policy stacking is generally permitted," *id.* at 167, 877 S.E.2d at 405, it believed that "in this particular type of claim"—namely, UIM claims under the owner's policy insuring the at-fault vehicle involved in the accident—"[t]he General Assembly . . . specifically confined the limit coverage comparison to the owner's policy," *id.* at 166–67, 877 S.E.2d at 405. Therefore, reasoning that "consider[ation of] multiple insurance policies in this particular type of claim is impermissible pursuant to [subdivision 20-279.21(b)(4)]," *id.* at 167, 877 S.E.2d at 405, the dissent would have reversed the trial court's order, *id.* at 167, 877 S.E.2d at 406.

Plaintiff appealed based on the dissent.[10] This Court also allowed plaintiff's petition for discretionary review, wherein plaintiff sought review of the application of the stack and compare rule.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C.G.S. § 1A-1, Rule 12(c)

---

[10] *See* N.C.G.S. § 7A-30(2) (2021), *repealed by* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d), https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2023-2024/SL2023-134.pdf. The repeal of N.C.G.S. § 7A-30(2) only applies to cases filed with the Court of Appeals on or after 3 October 2023. *See* Current Operations Appropriations Act § 16.21(e).

(2021). "A Rule 12(c) movant must show that 'the [pleading] . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar' to a cause of action." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 51, 790 S.E.2d 657, 659 (2016) (ellipsis in original) (quoting *Jones v. Warren*, 274 N.C. 166, 169, 161 S.E.2d 467, 470 (1968)). A trial court's grant of judgment on the pleadings is reviewed de novo. *Id.* Questions of statutory construction are also reviewed de novo. *City of Asheville v. Frost*, 370 N.C. 590, 591, 811 S.E.2d 560, 561 (2018).

The primary goal of statutory interpretation is to accomplish legislative intent, which, in the first instance, is discerned from the plain language of the enactment. *N.C. Farm Bureau Mut. Ins. Co. v. Lunsford*, 378 N.C. 181, 188, 861 S.E.2d 705, 712 (2021). If the statute's plain language is clear and unambiguous, this Court applies the statute as written and does not engage in further statutory construction. *See id.* at 189, 861 S.E.2d at 712. This Court may turn to other sources to determine legislative intent, including "the spirit of the act," only if the statute is ambiguous or susceptible to multiple interpretations. *Id.* at 188–89, 861 S.E.2d at 712.

"The avowed purpose of the [FRA], of which N.C.G.S. § 20-279.21(b)(4) is a part, is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763 (1989) (citations omitted), *superseded on other grounds*

*by statute*, An Act to Prohibit the Stacking of Uninsured and Underinsured Motorist Coverage, ch. 646, §§ 1–4, 1991 N.C. Sess. Laws 1550, 1550–59. "[T]h[is] fact," however, "does not inevitably require that one interpret the relevant statutory language to produce the maximum possible recovery for persons injured as a result of motor vehicle negligence regardless of any other consideration." *N.C. Farm Bureau Mut. Ins. Co. v. Dana*, 379 N.C. 502, 512, 866 S.E.2d 710, 717 (2021). Indeed, *"the usual rules of statutory construction govern . . .* subject to the caveat that the relevant statutory language should be construed to produce the greatest possible protection for the innocent victims of negligent conduct *permitted by a reasonable interpretation of the relevant statutory language." Id.* at 512, 866 S.E.2d at 717–18 (emphases added). Accordingly, the threshold question for this Court when interpreting the FRA is whether the Act's plain language is clear and unambiguous. If it is, we must dispassionately give effect to the plain language. If it is not, only then may this Court "liberally construe" its terms in favor of recovery.

Insurance companies doing business in North Carolina are required to offer UIM coverage. N.C.G.S. § 20-279.21(b)(4) (2019) ("[An] owner's policy of liability insurance . . . [s]hall . . . provide underinsured motorist coverage . . . ."). UIM coverage, which was developed out of uninsured motorist insurance, "provides a secondary source of recovery for an insured when the tortfeasor has insurance, but the tortfeasor's liability limits are insufficient to compensate the injured party." *Lunsford v. Mills*, 367 N.C. 618, 633, 766 S.E.2d 297, 307 (2014) (Newby, J.,

concurring in part and dissenting in part). In this way, UIM coverage acts "as a safeguard when [a] tortfeasor['s] liability polic[y] do[es] not provide sufficient recovery—that is, when the tortfeasor[ ] [is] 'under insured.' " *Id.* at 632, 766 S.E.2d at 306. Practically speaking, "[f]ollowing an automobile accident, a tortfeasor's liability coverage is called upon to compensate the injured [party], who then turns to *his own UIM coverage* when the tortfeasor's liability coverage is exhausted." *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 188, 420 S.E.2d 124, 127 (1992) (emphasis added), *superseded by statute*, An Act to Prohibit the Stacking of Uninsured and Underinsured Motorist Coverage, §§ 1–2, 1991 N.C. Sess. Laws at 1550–59, *as recognized in Mills*, 367 N.C. at 626, 766 S.E.2d at 303. Under our General Statutes, UIM coverage "augment[s] [the] inadequate recover[y] obtained from [an] underinsured tortfeasor[ ]" by "put[ting] the insured claimant . . . in the position he would have occupied had the tortfeasor been insured at limits equal to the claimant's UIM limits." *Mills*, 367 N.C. at 633–34, 766 S.E.2d at 307 (Newby, J., concurring in part and dissenting in part). As a result, "[t]he insured's UIM limits, not the insured's total damages, provide the ceiling for recovery." *Id.* at 635, 766 S.E.2d at 308.

The FRA's UIM provision, subdivision 20-279.21(b)(4), is logically organized. In the first paragraph, it mandates that insurance companies provide UIM coverage and expounds upon the specific limits they must provide. N.C.G.S. § 20-279.21(b)(4) (2019). Then, subdivision 20-279.21(b)(4) moves to the "activation provision," which encompasses the definitions of underinsured highway vehicle at issue in this case. *Id.*

As more fully explained below, for a claimant to "activate" his UIM coverage, he must show that the tortfeasor's vehicle meets one of the statute's definitions of underinsured highway vehicle. *Id.*; *cf. N.C. Farm Bureau Mut. Ins. Co. v. Martin*, 376 N.C. 280, 285, 851 S.E.2d 891, 895 (2020) ("The party seeking coverage under an insurance policy bears the burden 'to allege and prove coverage.' " (quoting *Brevard v. State Farm Mut. Auto. Ins. Co.*, 262 N.C. 458, 461, 137 S.E.2d 837, 839 (1964))). After activation, however, an insurer is not necessarily obligated to pay on the UIM policy. Rather, subdivision 20-279.21(b)(4)'s "triggering provision" explains that the activated UIM coverage must be "triggered" for a claimant to collect his UIM coverage. *See* N.C.G.S. § 20-279.21(b)(4) (2019). A claimant's UIM protection is triggered "when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted." *Id.*

In summary, "[a] UIM carrier pays on its policy to an injured claimant when (1) the auto accident involves a tortfeasor [vehicle that] meets the statute's definition of an underinsured highway vehicle (the activation provision); and (2) the underinsured highway vehicle's liability coverage has been exhausted (triggering provision)." *Mills*, 367 N.C. at 636, 766 S.E.2d at 309 (Newby, J., concurring in part and dissenting in part). Then, assuming the claimant's UIM coverage is both activated and triggered, subdivision 20-279.21(b)(4)'s second paragraph explains how

to calculate the amount of UIM benefits to be paid to the claimant.[11] N.C.G.S. § 20-279.21(b)(4) (2019).

As noted above, the threshold question in a UIM analysis is whether the tortfeasor's vehicle is an underinsured highway vehicle as defined by the activation provision in subdivision 20-279.21(b)(4). *Lunsford*, 378 N.C. at 186, 861 S.E.2d at 710. "[I]f no vehicle meets the definition[s] of an underinsured [highway] vehicle under [subdivision 20-279.21's] activation provision, then consideration of the subsequent . . . provision[s] is unnecessary." *Mills*, 367 N.C. at 636, 766 S.E.2d at 308 (Newby, J., concurring in part and dissenting in part).

The activation provision has two definitions of underinsured highway vehicle. First, it announces the general definition:

> "[U]nderinsured highway vehicle[ ]" . . . means a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is *less than* the applicable limits of underinsured motorist coverage *for the vehicle involved in the accident and insured under the owner's policy*.

N.C.G.S. § 20-279.21(b)(4) (2019) (emphases added). Stated differently, "UIM coverage is activated when the insured's UIM policy limits are greater than the liability limits of policies connected with the tortfeasor's ownership, maintenance, or use of a highway vehicle." *Mills*, 367 N.C. at 636, 766 S.E.2d at 309 (Newby, J.,

---

[11] Subdivision 20-279.21(b)(4)'s remaining paragraphs are irrelevant to the current dispute. *See* N.C.G.S. § 20-279.21(b)(4) (2019).

concurring in part and dissenting in part); *see also* 3 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 35.2 n.1 (3d ed. rev. 2005) (observing that subdivision 20-279.21(b)(4) "provide[s] that underinsured motorist insurance applies when the [claimant insured's UIM] coverage limit exceeds the tortfeasor's liability insurance coverage limit").

Subdivision 20-279.21(b)(4) then furnishes a second definition of underinsured highway vehicle, which is commonly known as the "multiple claimant exception" or the "2004 Amendment." *See Hebert*, 285 N.C. App. at 162, 877 S.E.2d at 403. The first sentence of the multiple claimant exception provides the second definition of underinsured highway vehicle:

> For purposes of an underinsured motorist claim asserted by a person injured in an accident where more than one person is injured, a highway vehicle will also be an "underinsured highway vehicle" if the total amount actually paid to that person under all bodily injury liability bonds and insurance policies applicable at the time of the accident is *less than* the applicable limits of underinsured motorist coverage *for the vehicle involved in the accident and insured under the owner's policy*.

N.C.G.S. § 20-279(b)(4) (2019) (emphases added). In other words, if an accident results in multiple innocent parties sustaining injuries, the at-fault vehicle qualifies as an underinsured highway vehicle if the total amount of liability coverage paid to an injured claimant is less than that injured claimant's UIM limits for the vehicle involved in the accident and insured under the owner's policy.

The second sentence of the multiple claimant exception is a caveat to the second definition:

> *Notwithstanding the immediately preceding sentence*, a highway vehicle shall not be an "underinsured motor vehicle" for purposes of an underinsured motorist claim under an owner's policy insuring that vehicle *unless* the owner's policy insuring that vehicle provides underinsured motorist coverage with limits that are greater than that policy's bodily injury liability limits.

*Id.* (emphases added). Put differently, for a claimant pursuing a UIM claim under the multiple claimant exception and proceeding under an owner's policy insuring the allegedly underinsured vehicle (i.e., the at-fault vehicle), that owner's policy's liability limits must be less than its UIM limits.

Since the 1990s, the Court of Appeals has permitted UIM claimants to "stack"—that is, add together—"all of the UIM limits available to" them "for purposes of determining whether [a] vehicle [is] an underinsured motor vehicle as defined under [N.C.]G.S. § 20-279.21(b)(4)." *Bost*, 126 N.C. App. at 51, 483 S.E.2d at 458; *see also, e.g.*, *Onley v. Nationwide Mut. Ins. Co.*, 118 N.C. App. 686, 689, 456 S.E.2d 882, 884 (1995); *Benton v. Hanford*, 195 N.C. App. 88, 92–94, 671 S.E.2d 31, 34–35 (2009). Although this Court has considered cases relating to the stack and compare rule in the past,[12] in this case we must determine whether defendant may stack and compare

---

[12] In *North Carolina Farm Bureau Mutual Insurance Co. v. Lunsford*, this Court "affirm[ed] prior decisions of the Court of Appeals allowing inter[-]policy stacking when calculating the 'applicable' policy limits as required under . . . N.C.G.S. § 20-279.21(b)(4)." 378 N.C. at 183, 861 S.E.2d at 708. In that case, however, this Court repeatedly emphasized that the plaintiff "d[id] not challenge" the Court of Appeals' caselaw allowing inter-policy

in order to activate his UIM coverage under his policy insuring the at-fault vehicle. Cognizant of our duty to dispassionately give effect to subdivision 20-279.21(b)(4)'s plain language, we conclude that defendant is not permitted to stack his parents' policy's UIM limits with his own policy's UIM limits in order to qualify his vehicle as an underinsured highway vehicle.

Looking first to the plain language of subdivision 20-279.21(b)(4), the statutory definitions of underinsured highway vehicle "appl[y] a comparison of limits approach." *Mills*, 367 N.C. at 636, 766 S.E.2d at 309 (Newby, J., concurring in part and dissenting in part); *see also* 3 Widiss & Thomas § 35.2 n.1 (observing that subdivision 20-279.21(b)(4)'s approach to the definition of underinsured highway vehicle is a "comparison[ ] between the tortfeasor's liability insurance and the claimant's underinsured motorist coverage limits" (emphasis omitted)). On one side of the scale, the definitions consider the liability limits applicable to *the tortfeasor's vehicle. See Mills*, 367 N.C. at 636, 766 S.E.2d at 309 (Newby, J., concurring in part and dissenting in part). Depending on which definition is applied, subdivision

---

stacking when qualifying a vehicle as an underinsured highway vehicle. *Id.* at 187–89, 861 S.E.2d at 710–12. Rather, "[t]he crux of the parties' dispute [was] whether [the tortfeasor's policy's] UIM coverage limit [was] also an 'applicable limit of [UIM] coverage for the vehicle involved in the accident and insured under the owner's policy.' " *Id.* at 186–87, 861 S.E.2d at 710. This Court's opinion essentially presumed the validity of inter-policy stacking and approved of the practice without thoroughly considering whether it aligns with subdivision 20-279.21(b)(4)'s plain language. To the extent that this Court did engage in statutory construction in *Lunsford*, it only did so to determine whether "applicable limits" also included "the UIM coverage limits contained within the insurance policy covering the tortfeasor's vehicle." *Id.* at 188–90, 861 S.E.2d at 711–13.

20-279.21(b)(4) focuses on either "the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident" or "the total amount actually paid to [a claimant] under all bodily injury liability bonds and insurance policies applicable at the time of the accident." N.C.G.S. § 20-279.21(b)(4) (2019). On the other side of the scale, and relevant here, the definitions consider *"the insured's* UIM policy limits." *Mills*, 367 N.C. at 636, 766 S.E.2d at 309 (Newby, J., concurring in part and dissenting in part) (emphasis added). More specifically, the scope of the inquiry is "the applicable limits of [the insured's] underinsured motorist coverage *for the vehicle involved in the accident and insured under the owner's policy."* N.C.G.S. § 20-279.21(b)(4) (2019) (emphasis added).

This language clearly and unambiguously means that subdivision 20-279.21(b)(4)'s activation provision is concerned with the claimant's UIM coverages that pertain to the vehicle involved in the accident, not all UIM policies for which the UIM claimant is personally eligible. In other words, if an insured's UIM policy is not "for" the vehicle involved in the accident and insured under the owner's policy, it is outside the scope of consideration when determining whether the at-fault vehicle is an underinsured highway vehicle. Conversely, the stack and compare rule permits consideration of "all of the UIM limits available to [the claimant]" regardless of their connection to the vehicle involved in the accident, *Bost*, 126 N.C. App. at 51, 483 S.E.2d at 458 (disavowing an interpretation that "confines [a claimant's] UIM

-17-

coverage only to [the vehicle he or she occupied at the time of the accident]"), which contravenes the statute's plain language.

For thirty years, however, the Court of Appeals anchored its adherence to the stack and compare rule on the statute's use of the word "limits." *Id.* In the court's view, "the 'limits' referred to . . . [were] all of the UIM limits available to [the claimant]." *Id.* This interpretation, however, ignores the remainder of subdivision 20-279.21(b)(4)'s first paragraph. In the sentences immediately surrounding subdivision 20-279.21(b)(4)'s definitions of underinsured highway vehicle, "limits" appears thirteen times. In each of those instances, the statute refers to the per-person and per-accident limits under a singular policy, not limits from multiple policies. *See* N.C.G.S. § 20-279.21(b)(4) (2019); *cf. Dana*, 379 N.C. at 511, 866 S.E.2d at 717 ("[In N.C.G.S. § 20-279.21(b)(4),] references to 'limit,' stated in the singular, occur in instances in which the General Assembly is referring to a single limit rather than to a collection of limits, such as the per-person and per-accident limits of liability that appear to be standard in most automobile liability insurance policies."). Moreover, elsewhere in the statute, the General Assembly clearly indicated when it authorized the inter-policy stacking of multiple automobile insurance policies. *See* N.C.G.S. § 20-279.21(b)(4) (2019) ("the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident"); *id.* (permitting, under subdivision 20-279.21(b)(4)'s second paragraph, claimants to stack "separate or additional policies" when calculating the amount of UIM payments to be

made). Without a clearer expression of intent from the General Assembly, the language it used does not support the broad interpretation of "limits" adopted by the Court of Appeals.

The Court of Appeals, however, defended its interpretation of "limits" by pointing to the second paragraph of subdivision 20-279.21(b)(4), which it called the "stacking subsection." *Bost*, 126 N.C. App. at 49–51, 483 S.E.2d at 457–58. That paragraph provides:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident. *Furthermore, if a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy* . . . . The underinsured motorist limits applicable to any one motor vehicle under a policy shall not be combined with or added to the limits applicable to any other motor vehicle under that policy.

N.C.G.S. § 20-279.21(b)(4) (2019) (emphasis added). In our view, the Court of Appeals' approach placed more reliance on the stacking language than it can reasonably bear.

Indeed, although the second paragraph does permit inter-policy stacking of UIM limits, it only does so at the calculation stage of the UIM process. As explained above, subdivision 20-279.21(b)(4), although concededly "lengthy and complicated,"

*Dana*, 379 N.C. at 508, 866 S.E.2d at 715, is logically organized. Initially, it explains how to "activate" the UIM coverage, which is the relevant issue in this case. Assuming the UIM coverage is activated, subdivision 20-279.21(b)(4) next explains how to "trigger" UIM coverage. Then, subdivision 20-279.21(b)(4)'s second paragraph explains how to calculate the amount of UIM payments to be paid to the claimant. It is at this stage—and this stage only—that subdivision 20-279.21(b)(4) permits a claimant to stack "separate or additional" UIM policies. N.C.G.S. § 20-279.21(b)(4) (2019). The second paragraph does not reach back and modify the definitions of underinsured highway vehicle. To hold otherwise is to "inevitably require . . . [an] interpret[ation of] the relevant statutory language to produce the maximum possible recovery for persons injured . . . regardless of any other consideration." *Dana*, 379 N.C. at 512, 866 S.E.2d at 717. This we are not permitted to do.

For all these reasons, we conclude that subdivision 20-279.21(b)(4)'s plain language does not allow for defendant to stack his policy's UIM limits with his parents' policy's UIM limits to determine if his car was an underinsured highway vehicle for his claim under his policy insuring his car. Accordingly, the Court of Appeals erred when it allowed defendant to do so. Properly interpreted, subdivision 20-279.21(b)(4) only permits comparison of "the limits of liability" of the at-fault vehicle in this case—defendant's car—with "the applicable limits of [UIM] coverage for the vehicle involved in the accident and insured under the owner's policy"—also defendant's car. N.C.G.S. § 20-279.21(b)(4) (2019).

In his answer, defendant admitted that the UIM limits for his car were identical to its liability limits. Defendant further admitted that his parents' policy did not insure defendant's vehicle. Thus, his parents' policy does not provide UIM coverage "for the vehicle involved in the accident." *Id.* Defendant's admissions bar defendant's claim for UIM payments under his own policy.

Indeed, on these facts, defendant's car does not qualify as an underinsured highway vehicle under the general definition. Unlike most UIM scenarios, defendant's car is both the at-fault vehicle and the vehicle through which defendant, as an innocent, injured party, seeks UIM recovery. Nevertheless, the sum of defendant's liability limits for his car is not "less than" its applicable UIM limits. Thus, defendant's car does not satisfy subdivision 20-279.21(b)(4)'s general definition of an underinsured highway vehicle.

Moreover, although defendant's car otherwise would qualify under the multiple claimant exception's definition because "the total amount actually paid to [defendant] under all bodily injury liability bonds and insurance policies . . . is less than the applicable [UIM] limits" for his car, *id.*, defendant's UIM claim is still barred. Defendant's claim also fails under the multiple claimant exception because it is a UIM claim brought under the owner's policy insuring the at-fault vehicle that is allegedly underinsured. Accordingly, the caveat sentence of the multiple claimant exception operates to bar defendant's claim because his policy insuring his car does not "provide[ ] [UIM] coverage with limits that are greater than that policy's bodily

injury liability limits." *Id.* Therefore, defendant's car does not satisfy either definition of underinsured highway vehicle, meaning he is unable to activate his policy's UIM coverage.

The decision of the Court of Appeals is therefore reversed, and this case is remanded to that court with instructions to remand this matter to the trial court for entry of judgment on the pleadings in favor of plaintiff.

REVERSED AND REMANDED.

Justice DIETZ did not participate in the consideration or decision of this case.

Justice EARLS dissenting.

The Court's decision in this case has limited applicability because, as the majority notes, the North Carolina General Assembly has again amended the Motor Vehicle Safety and Financial Responsibility Act of 1953 (FRA) on this very point, to clarify that:

> If a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the total amount of underinsured motorist coverage applicable to the claimant is the sum of the limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy, and shall not be reduced by a setoff against any coverage, including liability insurance, except for workers' compensation coverage to the extent provided for in subsection (e) of this section.

An Act to Make Various Changes to the Insurance Laws of North Carolina, to Amend the Insurance Rate-Making Laws, and to Revise High School Interscholastic Athletics, S.L. 2023-133, § 12(d), (i), https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2023-2024/SL2023-133.pdf (codified at N.C.G.S. § 20-279.21(b)(4) (effective Jan. 1, 2025)).

This case asks us to determine, under the statute in effect at the time of the accident and our applicable precedents, whether Mr. Hebert may stack his vehicle's UIM coverage along with the coverage under his parents' insurance policy on which he is an insured driver in order to determine whether his vehicle was an underinsured highway vehicle. This is an issue we resolved definitively in *North Carolina Farm Bureau Mutual Insurance Co. Inc. v. Lunsford*, 378 N.C. 181 (2021) (*Lunsford*).

Blithely mischaracterizing the holding in *Lunsford* as a presumption rather than binding precedent, the new majority reverses course and adopts a position flatly inconsistent with that prior case. When overturning precedent, the Court should at a minimum acknowledge it, and, if the rule of law has any meaning, should justify doing so. *See State v. Elder*, 383 N.C. 578, 603 (2022) (factors to be considered when deciding to overturn precedent include "the quality of the prior decision's reasoning, the workability of the rule it established, its consistency with other related decisions, developments since the decision was handed down, and reliance on the decision.") (quoting *Janus v. Am. Fed'n of State, Cnty, and Mun. Emps., Council 31*, 138 S. Ct. 2448, 2479-80 (2018)); *McGill v. Town of Lumberton*, 218 N.C. 586, 591 (1940) ("It is, then, an established rule to abide by former precedents . . . as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion . . .").

There is no dispute that on 21 October 2020, Matthew Hebert was a passenger in his 2004 Chevrolet car being driven by Sincere Terrell Corbett on Highway N.C. 42 in Johnston County, North Carolina, when they collided with another vehicle owned and driven by William Coats. Jamal Direll Hicks, Jr. and Chase Everette Hawley were passengers in Mr. Hebert's car. Mr. Corbett and Mr. Hicks were killed in the collision. Mr. Hebert, Mr. Hawley, and Mr. Coats sustained significant injuries. Mr. Hebert's vehicle was covered by a personal auto insurance policy issued by North Carolina Farm Bureau Mutual Insurance Co. Inc. (Farm Bureau) to Mr. Hebert (Mr.

Hebert's policy). On 21 October 2020, Mr. Hebert qualified as an insured of the UIM coverage of a personal auto policy issued by Farm Bureau to Mr. Hebert's parents, which provides UIM coverage of $100,000 per person / $300,000 per accident and medical payments coverage of $2,000.

## I.    Governing Law

Most recently, in *Lunsford,* this Court held that the very statute as issue here, N.C.G.S. § 20-279.21(b)(4) (2019), provides for interpolicy stacking. *See Lunsford*, 378 N.C. at 188, 190 n.2, 191. This opinion was in no sense an "outlier" but instead affirmed multiple earlier rulings on this point by the Court of Appeals. Citing *Benton v. Hanford,* 195 N.C. App. 88 (2009), this Court explained that:

> Interpreting the ambiguous language contained in N.C.G.S. § 20-279.21(b)(4) to permit interpolicy stacking in this circumstance is "[i]n keeping with the purpose of the [FRA]" because it allows injured North Carolina insureds to access the UIM coverage they paid for in a greater number of circumstances, reducing the likelihood that the costs of the damage caused by an underinsured tortfeasor will be borne by the insured alone.

*Lunsford*, 378 N.C. at 191; *see also Tutterow v. Hall*, 283 N.C. App. 314, 319 (2022) ("[T]he statute provides an unambiguous method to calculate the applicable limit of combined UIM coverage: it is the difference between the total amount paid under all exhausted liability policies and the total limits of all applicable UIM policies."). This Court also noted in *Lunsford* that the North Carolina General Assembly "has not acted in a way that evinces disagreement with *Benton* in the years since that case was decided" and that in any case, failure to allow interpolicy stacking would

frustrate the bargain that the parties struck because *Benton* was the governing law at the time the insurance policy contract was entered into. *Lunsford*, 378 N.C. at 190 n.2. Both of those considerations apply with equal force in this case. At the time Mr. Hebert and his parents purchased their insurance policies, allowing interpolicy stacking to determine UIM coverage was the law in this State.

The unavoidable consequence of the majority's decision today is that the injured parties in *Lunsford* are able to stack UIM liability coverage from an out-of-state policy with the Farm Bureau policy covering the accident, while in this case, the injured parties cannot stack the coverages in two Farm Bureau policies purchased in North Carolina and will not be compensated to the full extent of the coverages they purchased. This not only contravenes the purpose of the North Carolina General Assembly in enacting the statute, it also frustrates the principle of equal justice under the law. The majority creates illogical distinctions in otherwise clear statutory language and ties itself in jurisprudential knots to arrive at the outcome-determined conclusion to favor insurers at the expense of their insured, contrary to the purpose of the FRA. *See, e.g., Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209 (1990) ("The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature."); *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573–74 (2002) (cleaned up) ("The avowed purpose of the Financial Responsibility Act . . . is to compensate the innocent victims of financially irresponsible motorists.")

## II.    The FRA's Plain Language

The majority quotes the FRA's definitions of an underinsured vehicle and the provisions explaining what happens when more than one person is injured in an accident. *See* N.C.G.S. § 20-279.21(b)(4). Importantly, these definitions are then followed in the same subdivision with this explanation, which plainly establishes that if a person is an insured under another policy with UIM coverage, those limits also apply to determine the upper limit of coverage. The statute in effect at the time says:

> In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident. **Furthermore, if a claimant is an insured under the underinsured motorist coverage on separate or additional policies, the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimant's underinsured motorist coverages as determined by combining the highest limit available under each policy;** provided that this sentence shall apply only to insurance on nonfleet private passenger motor vehicles as described in G.S. 58-40-15(9) and (10). The underinsured motorist limits applicable to any one motor vehicle under a policy shall not be combined with or added to the limits applicable to any other motor vehicle under that policy.

*Id.* (emphasis added). The plain language of the statute does allow Mr. Hebert to combine the underinsured motorist liability coverage on his own policy with that of the separate policy covering him that was issued to his parents. The majority's analysis that this section is applicable only at the "calculation" stage and not at the

"activation" stage makes no sense. How could it be possible that underinsured motorist liability coverage would be "activated" or "triggered" by one lower set of coverage limits while the amount of coverage itself would be determined by a separate set of stacked coverage limits? This is especially illogical when the statute itself says nothing about activation, triggering, or calculation as being governed by separate standards.

The statute defines how an underinsured motorist claim is determined, and where a claimant, like Mr. Hebert, is an insured under another policy, "the limit of underinsured motorist coverage applicable to the claimant is the difference between the amount paid to the claimant under the exhausted liability policy or policies and the total limits of the claimants underinsured motorist coverages as determined by combining the highest limit available under each policy." *Id.* Nothing in the structure or language of the statute indicates that this sentence, in a paragraph which starts with "[i]n any event," is anything other than a clear intent to allow interpolicy stacking. Thirty years of Court of Appeals precedent on this question is not in error. *See, e.g., N.C. Farm Bureau, Mut. Ins. Co. v. Bost*, 126 N.C. App. 42, 51 (1997) (citing *Onley v. Nationwide Mut. Inc. Co.,* 118 N.C. App. 686 (1995) ("The 1991 amendment expressly states that a claimant is not entitled to stack UIM coverage within policies, . . . but states that a claimant is entitled to stack between policies, upholding *Onley* . . . and therefore, defendant Carrie Bost is allowed to stack the UIM coverages of Farm Bureau and Allstate for purposes of determining whether Ezzelle's vehicle

was an underinsured motor vehicle as defined under G.S. § 20-279.21(b)(4).").

## III.    Conclusion

Interpreting the statutory language of N.C.G.S. § 20-279.21(b)(4) to permit interpolicy stacking in this circumstance, as we held in *Lunsford*, is what the statute requires and also is consistent with the FRA's purpose "because it allows injured North Carolina insureds to access the UIM coverage they paid for in a greater number of circumstances, reducing the likelihood that the costs of the damage caused by an underinsured tortfeasor will be borne by the insured alone." *Lunsford*, 378 N.C. at 191 (first quoting *Benton*, 195 N.C. App. at 92; and then quoting *Proctor v. North Carolina Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 225 (1989) ("[T]he statute's general purpose, which has not been changed, is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection.").

Mr. Hebert owned the car that was involved in the collision, which his policy insures. He also was a named insured on his parents' policy. Both policies were purchased when *Benton* was the controlling precedent on this question. The statutes and our precedents provide that Mr. Hebert may combine the coverages under both his and his parents' policies to determine the amount of underinsured motorist coverage he is entitled to. The majority's ruling to the contrary is a perversion of the intent of the General Assembly and contrary to basic principles of the rule of law. Therefore, I dissent.

Justice RIGGS joins in this dissenting opinion.